Agnes Tuttle, Appellee, v. Seward M. Gunderson et al., Appellants.

Gen. No. 33,443.

Opinion filed October 11, 1929. Rehearing denied October 22, 1929.

MILLER, GORHAM & WALES, for appellants; C. R. LARRABEE, of counsel.

BROWN, BROWN & BROWN, for appellee.

Mr. Justice Scanlan delivered the opinion of the court.

This is an appeal by Seward M. Gunderson and Joseph Simons, trustees under the will of William P. Tuttle, deceased, from an order of the circuit court of Cook county.

Agnes Tuttle, appellee, filed her bill in that court for a divorce from her husband, William J. Tuttle (hereinafter referred to as the defendant), on the ground of habitual drunkenness. The bill alleged that one child, William Pierce Tuttle, aged two and one-half years, was born of the marriage; that the defendant deserted the appellee and said child in Paris, France; that the defendant was possessed of stocks, bonds and securities amounting to approximately $350,000, and that he "receives in installments the income and increments of a trust fund of $250,000.00 administered by Seward M. Gunderson and Joseph Simons, trustees, appointed in and by the Last Will and Testament of William P. Tuttle, deceased, which said income and increments amount, as your oratrix is informed and believes, to the sum of from $15,000.00 to $20,000.00 per year, and that the said defendant is amply able to provide for the support and maintenance of your oratrix and their said minor child." Personal service was had upon the trustees, but the defendant was not within the jurisdiction of the court and service by publication was had as to him. In the answer filed by Simons, trustee, he avers "that the defendant, William J. Tuttle, receives in installments the income and increments of a trust fund of $250,000 administered by this defendant and Seward M. Gunderson, as Trustees, appointed under the will of William P. Tuttle, which said net income amounts to slightly over $15,000 a year; . . . that the provisions of the will of William P. Tuttle constitute a spendthrift trust, and the income therefrom must be paid to William J. Tuttle in person and not upon any written or

verbal order, nor upon any assignment or transfer by William J. Tuttle until he shall arrive at the age of fifty (50) years, at which time the said trust fund shall be paid over to the said William J. Tuttle, if- living, likewise in person and not upon any written or verbal order, nor upon any assignment or transfer by said William J. Tuttle, and this defendant shows that the said William J. Tuttle will not be fifty (50) years old until February 21, 1932.'' Gunderson, trustee, filed a like answer. Thereafter the appellee filed a petition in which the material provisions of the will of William P. Tuttle are set up *verbatim.* The petition also contains (*inter alia*) the following: ''That she and her said child are in dire and necessitous circumstances and it is the legal duty of said defendant to provide for the support and maintenance of your petitioner and said child during the pendency thereof and upon his failure so to do that the income and increment of said trust estate or so much thereof as may be necessary be subjected by order of this court to be paid to her for the support and maintenance of herself and child during the pendency of this suit and until the further order of this court, and that the said . . . trustees, should be restrained . . . from making any further payments to said defendant, William J. Tuttle, of the income and increments of said trust estate until suitable provision is made by said defendant for the support and maintenance of your petitioner and the child of said marriage. Petitioner prays that an order may be entered . . . awarding to your petitioner the care and custody of . . . the child of said marriage, until the final hearing of this cause; that an order may be entered . . . against the defendant . . . for such sum or sums of money as may be necessary for the support and maintenance of your petitioner and said minor child during the pendency of this cause and that a reasonable amount be allowed her on account of

solicitor's fees . . . and that the sum so awarded to your petitioner for the support and maintenance of herself and said minor child and for and on account of her solicitor's fees be made a charge upon the income and increment of said trust estate, or so much thereof as may be necessary to satisfy said order of court, and that the said . . . Trustees . . . be restrained . . . from delivering to, setting over, transferring and paying to said William J. Tuttle all or any part of the income and increments of said trust estate until the further order of this court.'' Thereafter the trustees filed a written motion that the bill be dismissed as to them, for the following reasons: ''1. That the court is without jurisdiction to enter a decree *in personam* against the defendant, William J. Tuttle. 2. That the rights of the complainant against these defendants, if any there could be, are susceptible of assertion solely through and on account of the rights of the complainant, if any there be, against the defendant, William J. Tuttle. 3. That there is no property of the defendant, William J. Tuttle, within the jurisdiction of the Court; that it appears of record herein that these defendants are Trustees of a spendthrift trust; that the defendant William J. Tuttle has no right in or title to any moneys in the hands of the defendants; that the Court is without jurisdiction to enter any decree against these defendants or against the moneys in their hands as Trustees for the payment of any moneys to the defendant, William J. Tuttle, or for his account, whether to the complainant or to any other person or persons, or for the payment of any moneys to the complainant or to any other person or persons; and that the court is without jurisdiction to enter any decree against these defendants or against the moneys in their hands as Trustees creating a lien or charge against or upon such moneys or restraining these defendants from paying out such moneys upon the several trusts upon which they hold the same.''

This motion was denied and thereafter an order was entered that contains (*inter alia*) the following: ''That the court has no jurisdiction over the person of said . . . defendant; . . . that the said defendant is beneficiary of a certain trust estate in the sum of Two Hundred Fifty Thousand Dollars created by a codicil to the Last Will and Testament of William P. Tuttle, Deceased. (The codicil is set out in *haec verba.*) . . . That said trust is a spendthrift trust and that said defendant . . . has a vested interest in said trust estate, but that his enjoyment thereof is postponed until the said defendant shall arrive at the age of fifty years; . . . that said defendant is now of the age of forty-seven years; that the income and increments of said trust estate amount to slightly in excess of Fifteen Thousand Dollars per year, and under the terms of said Will the income and increment of said trust estate is to be paid in installments convenient to said trustees to said defendant, . . . and that it was the intention of the testator in and by said Last Will and Testament as evidenced by the terms thereof to provide for the support and maintenance of the said defendant and for the support and maintenance of defendant's wife and child, if any were born to them, out of the income of said trust estate, and that the said complainant . . . and said child . . . have an equitable interest in said trust estate and are entitled to support and maintenance out of the income therefrom and that sufficient of said income from said trust estate should be sequestrated by said trustees for the support and maintenance of said complainant and said minor child until the further order of this court, and that the sum of Fifty Dollars per week each is a reasonable allowance for the support and maintenance of said complainant and said child; . . . that the said defendant . . . is beyond the jurisdiction of this court and that said trust estate and the income and increment therefrom are within the jurisdiction of this

court and that this proceeding is a proceeding *in rem* and that the court has jurisdiction of the said trustees and said income from said trust estate. . . . It Is Further Ordered that the said . . . Trustees . . . sequester from said income of said trust estate as the same comes into the hands of said trustees the sum of One Hundred Dollars per week, and pay the same over to said complainant, Agnes Tuttle, in installments convenient to said trustees of said trust estate beginning as of January 11th, A. D. 1929, the sum of Fifty Dollars per week for the support and maintenance of said complainant and the further sum of Fifty Dollars per week for the support and maintenance of said . . . minor child of said parties, until the further order of this court.'' The appellants have appealed from this order.

Appellants contend that the appellee's right to alimony in the present chancery proceedings should be held to be a right not superior in character to ''the rights of *bona fide* merchandise, contract or judgment creditors,'' and that the rule stated in *Steib v. Whitehead,* 111 Ill. 247, and *Congress Hotel Co. v. Martin,* 312 Ill. 318, ''should control'' the claim of the appellee, and adversely to her. In the cases cited—proceedings at law—it was held that ''the creator of a trust may secure the enjoyment of it to the objects of his bounty by providing it shall not be alienable by them or become subject to be taken by the creditors, and that such intention expressed in his will will be carried out.'' The basis of appellee's claim is that she, as the wife of the defendant, and the minor child of the appellee and the defendant, have an equitable interest in the increment and income of the trust fund to the extent of a right of support and maintenance, and that the obligation of a husband to support and maintain his wife and children ''rests on a different basis from the ordinary contract obligation; that the right to support is not founded on contract, express or implied, but on the

natural and legal duty of the husband to support the wife,'' and that the rule stated in the cases cited has no application to the present proceedings.

In *England v. England,* 223 Ill. App. 549, 555, it is said: ''In this State alimony is not a debt. It is a social obligation as well as a pecuniary liability; it is founded on public policy and is for the good of society. *Deen v. Bloomer,* 191 Ill. 416. In *Barclay v. Barclay,* 187 Ill. 375, it was said: 'The liability to pay alimony is not founded upon a contract, but is a penalty imposed for a failure to perform a duty. It is not to be enforced by an action at law in the State where the decree is entered, but is to be enforced by such proceedings as the chancellor may determine and adopt for its enforcement.' In *Welty v. Welty,* 195 Ill. 335, the Supreme Court quoted with approval the following language from *Audubon v. Shufeldt,* 181 U. S. 575: 'Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction.' '' In *Moorehead's Estate,* 289 Pa. 542, 552–3, it is said: ''There is still another great factor to be considered in this case, the legal unity of husband and wife, and it is a unity which must continue to be recognized, however much modern laws enlarge the separate rights and privileges of each. And with this merger of existence and interests, established from the most ancient times in all civilized lands, how can it be claimed that the status of creditor and debtor is established between them, when it is a question of the mutual performance and fulfillment of fundamental duties as husband and wife, which the obligations of humanity impose and the safety of society requires from both? 'The marriage contract has not the elements of ordinary contractual

relations. That contract is a life contract, imposing upon the husband the support and maintenance of the wife in sickness and in health during life, contingent only on the termination by decree of court for statutory reasons': Keezer on Marriage, section 55; 'The duty of the husband to support the wife is not dependent upon contract': 30 C. J. 517. These are accordingly primal obligations under the marriage relation imposed immemorially upon the husband, and which do not fall within the range of the nature or the meaning of a debt. Every debt of course is an obligation; *but every obligation is not a debt: Sonnesyn v. Akin,* 97 N. W. 557. A debt is a sum of money due by contract, express or implied. But a tax is not a debt. It is not founded upon contract. It does not establish the relation of debtor and creditor between the taxpayer and the State: *Perry v. Washburn,* 20 Cal. 318. When an alien secures citizenship it becomes his duty to support and protect the Commonwealth as far as possible. But he has made no contract to that effect. Similarly the duty of a husband to provide for and protect his family becomes a duty upon his marriage, a fundamental duty, not a debt.'' (Italics ours.) We are satisfied that the rule announced in *Steib v. Whitehead* and *Congress Hotel Co. v. Martin, supra,* has no application to the facts and pleadings of the instant case, and that the contention of the appellants cannot be sustained.

The appellants contend that ''it was not the intention of the testator, William P. Tuttle, in and by his will, as evidenced by its terms, to provide for the support or maintenance of the wife and child of his son out of the income of the trust estate,'' and that therefore the finding of the chancellor ''that the said complainant, Agnes Tuttle, and said child, William Pierce Tuttle have an equitable interest in said trust estate and are entitled to support and maintenance out of the income therefrom,'' violates the rule that the in-

tention of the creator of a trust, when expressed in a will, will be carried out. The material parts of the codicil in question are as follows: "Further, I now also give, devise and bequeath to my son, William J. Tuttle to be taken by him as of the valuation of One Hundred and fifty thousand dollars, all of my lands, farms and ranches situated in North Dakota and in South Dakota, of which I may die seized and possessed, to have and to hold the same to him, *his heirs and assigns forever.* Further, I now also hereby direct that my Trustees hereinafter named shall set aside out of my estate, and I do for that purpose give to them, the sum of Two hundred and fifty thousand dollars, which shall by them be invested, and the income and increment shall be paid in installments convenient to my trustees, to my son, William J. Tuttle, in person and not upon any written or verbal order, nor upon any assignments or transfer by said William J. Tuttle, until he shall arrive at the age of fifty years, at which time the said trust fund shall be paid over to my said son, William J. Tuttle, if living, likewise in person and not upon any written or verbal order nor upon any assignment or transfer by said William J. Tuttle. In the event of the death at any time during the continuance of this trust, the amount of the trust fund then so remaining together with the unpaid increase and increment thereof *shall be paid to, transferred and assigned to whomsoever he may by his written last Will and Testament designate, and in default of such designation, then to the administrator of his estate.* . . . This entire codicil shall be void and of no effect if my son, William J. Tuttle, shall attempt or aid in any attempt to oppose the admission of this will to probate, or to have the same set aside or declared invalid. Nevertheless if he shall refrain from any such opposition or antagonism to my wishes and shall execute a written release and agreement sufficient under

the law to the end that the probating of my last Will
and Testament shall be final and unquestioned then,
I direct my Executors and Trustees to expedite the pay-
ment to him of his legacy and his income *and to aid
and help him in all lawful matters whatsoever.*"
(Italics ours.)

The appellee and the defendant in the divorce pro-
ceedings were married December 30, 1913, and one child
was born of the marriage. The spendthrift trust es-
tate was created by a codicil dated September 18, 1924,
and at this time the appellee and the defendant were
living together as husband and wife. The testator died
in October, 1924. Between 1913 and the time of his
death William P. Tuttle executed four codicils to his
will, in none of which is there any reference to the wife
of the defendant, and the appellants argue that "had
the testator intended to provide for the complainant he
could and would certainly have done so in express
terms."

The testator, at the time of the making of the codicil
in question, knew that the appellee and the defendant
were married and living together. "In volume II,
Bishop on Marriage and Divorce, paragraph 447, it is
said: 'What families ordinarily and properly subsist
on is the income of the husband.' In *Wetmore v. Wet-
more,* 149 N. Y. 520, 44 N. E. 169, it is said: 'Equity
will not feed the husband and starve the wife.' Recog-
nizing the Biblical doctrine that husband and wife are
one, it is inconceivable that a testator who expects his
beneficiary, to whom he gives a stated income for his
support and maintenance, to marry, should expect such
beneficiary to enjoy the income alone and that the wife
should be supported from some other fund, or not at
all. When all the provisions of this will are taken into
consideration, it is evident that such was not the in-
tention of the testator, but that appellee, when she
married Albert C., acquired an equitable interest in the

trust fund to the extent of a right of support and maintenance together with her husband.'' (*England v. England, supra,* p. 554.) In *Wetmore v. Wetmore,* 149 N. Y. 520, the will creating the trust for the husband made no mention of the wife, but the court held that the testator in constituting a trust for the benefit of his son, must have contemplated that it should also be for the benefit of his wife, should he marry, and his children, should any result from the marriage. That the above is a fair interpretation of this decision, see *Wetmore v. Wetmore,* 162 N. Y. 503, 510. In *Eaton v. Eaton,* 81 N. H. 275, the court held that a spendthrift trust ''for the benefit of my said son as his needs may require,'' the son having then, to the testator's knowledge, a wife and daughter dependent upon him for support, requires the trustee to apply the fund for the benefit of both the son and those dependent upon him; that the needs of a married man include not only his needs but also the needs of his family. In *Moorehead's Estate, supra,* p. 548, the court said: ''The very fact that the name of the wife of her grandson is not mentioned is in itself evidence that such a contingency was not in the mind of the testatrix. Determined as she was to protect her grandson from the effects of his own folly and extravagance in his relations with people in general, would she not, had she intended to include the wife within the range of the trust inhibitions as to contracts and debts, have added a provision to that effect?'' This language is particularly applicable to the facts of the instant case. Nowhere in the will does the testator show any feeling of animosity toward the appellee, although he did not hesitate to plainly express his feelings toward the defendant, as appears from the following language in the first codicil: ''To my son, William J. Tuttle, in return for the care, sorrow and disappointment he has caused me all the days of his life, for his dissolute career and graceless

disobediences, his perjury, his disrespect and animosity, I do give and bequeath the sum of Ten Dollars to buy a mourning ring and the memory of a misspent youth.'' It is plain that if the testator had any feeling of animosity toward the appellee, he would not have hesitated to express it. It is clear from the entire provisions of the trust that the testator, in executing the same, did not intend to deprive the appellee of any benefits she might acquire in the trust fund as the wife of the defendant. The defendant had the right to will the entire trust estate to the appellee, and, in any event, if she survived him, she would participate, under the law, in his estate. The words ''and to aid and help him in all lawful matters whatsoever'' are not without some significance. The testator knew that the appellee was the wife of the defendant, and is presumed to have known the law that requires a husband to support his wife and children. The father saw fit, in his will, to declare in a public and solemn way that the defendant was a spendthrift and a dissolute character and one indifferent to family ties and obligations, and the words in question should be interpreted in the light of the father's knowledge of the son's character and habits. It is highly improbable that the father intended to create a trust solely for the benefit of such a son, and that he was willing to have the wife and any children that might be born of the marriage, want. To permit such an interpretation, in the light of the entire will and the circumstances surrounding the testator and the interested parties at the time the codicil in question was executed, would be a serious and unwarranted reflection upon the dead. It was because of the son's character and habits that the father condemned him and created the trust estate, and the testator knew that the son was not likely to fulfill the obligations of a husband and father. If he was willing to help such a son, as he did in the execution of the trust estate, it

is unreasonable to believe that such a man intended that the wife of the son, against whom he had no feeling of animosity, and children that might be born of the marriage, should be denied any benefit in the income and increment of the estate. What was said in the opinion in *Moorehead's Estate* (heretofore cited) is specially applicable to the facts of the instant case.

In *England v. England, supra,* the trust read: "And it is my will that the payments to be made by said trustees to the said Albert C. England and Bina F. England (grandchildren of the testator) under the provisions of this my will *shall be made to them personally,* and the respective interests of said Albert C. England and Bina F. England as provided herein including the accumulations, income and money that they may be entitled to under the provisions of this my will, shall not be in any manner negotiable or transferable, nor subject to execution, attachment or garnishment, and neither the said Albert C. England nor the said Bina F. England shall have any power or authority to create any lien upon nor to sell, assign or transfer their respective interests or the income, accumulations or money to which they or either of them may be entitled or any part of the same;" (italics ours) and in the opinion, written by Mr. Justice Heard, it is said: "Trusts of this kind are sometimes complete spendthrift trusts and sometimes they are trusts having some of the characteristics of spendthrift trusts but lacking some of the qualities, so that in each case, in passing upon the legal effect of a trust of this character, it is necessary to take into consideration the situation of the parties, to ascertain from the complete will the scheme and purpose which the testator had in mind and, if possible, carry out such scheme and purpose by giving effect to all the various provisions of the will so far as the same is possible." The court, after an analysis of the said trust provisions and the situa-

tion of the interested parties, held that "it is inconceivable that a testator who expects his beneficiary, to whom he gives a stated income for his support and maintenance, to marry, should expect such beneficiary to enjoy the income alone and that the wife should be supported from some other fund, or not at all," and that the wife, "when she married Albert C., acquired an equitable interest in the trust fund to the extent of a right of support and maintenance together with her husband," and that the trust did not provide that the income from the trust fund could not be used "in accordance with a decree of a court of equity to keep Albert C. out of jail for contempt of court for failure to comply with the court's decree to pay alimony for the support of his wife." That this case is against their contention appellants do not seriously dispute, but they seek to destroy the effect of it by unfair criticism of the opinion. We find no force in this argument of the counsel. While *England v. England, supra,* appears to be the only case in point in this state, it is not without support in the decisions of the courts of several of the sister states, and the appellants have failed to cite a single case that runs counter to it. An illustration of a complete or strict spendthrift trust was before the court in *Board of Charities v. Lockard,* 198 Pa. 572, where the trust read: "All moneys or legacies herein bequeathed are to be paid to the legatees in person, *and to no one else,* and shall not be assignable or transferable, nor subject nor liable in any way whatever for any debts *or obligations* of any of said legatees, heretofore or hereafter incurred or contracted or created." (Italics ours.) The court held that the words "and to no one else" created a strict spendthrift trust and that the income in the hands of the trustee could not be attached "by virtue of the warrant of seizure issued by a magistrate . . . under the desertion act, for the maintenance of the wife and child of

the cestui que trust." The trust in the instant case does not contain any such words. In a much later case (*Moorehead's Estate, supra*) the Pennsylvania court held that the words "creditors," "contracts" and "debts," as used in a spendthrift trust provision in a will, will not be construed as protecting the income of the trust from the claim of the cestui que trust's wife for support, where it appears that the husband had deserted his wife and that a consideration of the whole will of the testatrix and of the circumstances attending its making showed that the testatrix had no intention of depriving the wife of support, and the court further held, as we have heretofore noted, that "the very fact that the name of the wife of her grandson is not mentioned is in itself evidence that such a contingency was not in the mind of the testatrix." The court also stated that to give to the trust the construction contended for by the trustee "would be to place it in direct antagonism to every recognized claim of morality and to every purpose of public policy." *Board of Charities v. Lockard, supra,* and *Thackara v. Mintzer,* 100 Pa. 151, were cited to the court in *Moorehead's Estate,* but the court did not refer to either of them in its opinion. The principles stated in *Moorehead's Estate,* in so far as they apply to the instant case, are in accord with *England v. England.* In the notes to *Re Moorhead,* 52 A. L. R. 1259, the author says: "Except where the trust was a spendthrift trust of the strictest sort, requiring the income to be paid to the beneficiary in person, and no one else (as in *Board of Charities & Correction v. Lockard* (1901) 198 Pa. 572, 82 Am. St. Rep. 817, 48 Atl. 496), the courts have uniformly construed provisions for the protection of the beneficiary from the claims of creditors or the consequences of his own improvidence, as not preventing the income of the trust from being subjected to the support of the beneficiary's wife and minor children. See *England v.*

*England* (Ill.) *supra; Gardner v. O'Loughlin,* (1912) 76 N. H. 481, 84 Atl. 935; *Eaton v. Eaton* (1924) 81 N. H. 275, 35 A. L. R. 1034, 125 Atl. 433, s. c. on subsequent appeal in (1926) — N. H. —, 132 Atl. 10; *Pruyn v. Sears* (1916) 96 Misc. 200, 161 N. Y. Supp. 58; *Re Moorhead* (reported herewith) *ante,* 1251; *Decker v. Directors of Poor* (1888) 120 Pa. 272, 13 Atl. 925; *Board of Charities & Correction v. Moore* (1888) 6 Pa. Co. Ct. 66, 19 Phila. 540, 45 Phila. Leg. Int. 216; *Board of Charities & Correction v. Kennedy* (1894) 3 Pa. Dist. R. 231, 34 W. N. C. 83.'' After a careful consideration of the instant contention of the appellants, we have reached the conclusion that it is without merit.

The appellants also contend that the following question should be determined by this court: "Does the interest of William J. Tuttle in the corpus, increment and income of the trust created by the last will and testament of his father, William P. Tuttle, the trust being admittedly a spendthrift trust, constitute property in the jurisdiction of the Circuit Court of Cook County of a nature and character sufficient to warrant the Court in dealing with the trust estate for the temporary support and maintenance of the wife and child of William J. Tuttle, he being personally beyond and without the jurisdiction of the Court?" The chancellor found that under the terms of the trust "the income and increment of said trust estate is to be paid in installments convenient to said trustees to said defendant, William J. Tuttle," and the trustees were ordered to "*sequester from said income* of said trust estate as the same comes into the hands of said trustees the sum of One Hundred Dollars per week, and pay the same over to said complainant, Agnes Tuttle, in installments convenient to said trustees," etc. (Italics ours.) The defendant was entitled to the income and increment of the trust estate and the trustees were bound to pay it to him. The chancellor, in the order, was dealing

solely with the property of the defendant, and it is the law that courts of equity have jurisdiction in divorce proceedings, in the absence of personal service upon or appearance by a defendant, to deal with property of the defendant in the jurisdiction of the court through a decree *in rem*.

The order of the circuit court of Cook county, of February 2, 1929, is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J. concur.