**Marion Keller, Appellee, v. Theodore P. Keller et al., Appellants.**

**Gen. No. 38,521.**

Opinion filed March 2, 1936.

CUTTING, MOORE & SIDLEY, of Chicago, for appellants; EDWIN C. AUSTIN, MERRITT C. BRAGDON and ADLAI E. STEVENSON, all of Chicago, of counsel.

JACOB J. CHAPMAN and MAURICE L. DAVIS, both of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This appeal is by defendant trustees from a decree entered July 13, 1935, directing them to apply a portion of the income of a certain trust fund in their hands, otherwise payable to Theodore P. Keller, to the satisfaction of orders entered by the superior court of Cook county against him for the support of his minor children, Lloyd George and Edith Jane, during their minority. The cause was heard upon a stipulation of facts, and the question for our consideration concerns the law applicable thereto.

The summarized facts would appear to be that plaintiff, Marion Keller, and defendant Theodore P. Keller, were married January 17, 1917, and Lloyd George and Edith Jane were born of that marriage. May 17, 1926, Marion Keller sued Theodore P. Keller for separate maintenance in the superior court of Cook county, and May 28, 1927, she filed her amended bill, praying for divorce. June 17, 1927, a decree in her favor was entered as prayed. The decree gave to her the care, custody and education of these minor children, but no provision was made in the decree for the payment of alimony or for the support of the children. However, the day following the entry of the decree Theodore P. Keller executed and delivered a trust indenture by which he conveyed to the Northern Trust Co. and Marion Keller, as trustees, certain improved real estate situated in Chicago and known as 1245 Jarvis avenue, the express intention being thereby to pro-

vide adequate support for the children. At the time of the conveyance the real estate was incumbered by a mortgage for $17,000, and shortly after June 2, 1930, the income became insufficient to pay interest and expenses of upkeep, whereupon the trustees on April 16, 1934, in order to avoid the expense of foreclosure (and with the consent of Theodore P. Keller) conveyed the premises in satisfaction of the mortgage indebtedness. These minor children have lived with plaintiff, their mother, and have been supported by her, she being permitted to occupy one of the apartments at 1245 Jarvis avenue, but as she was unable to pay rent she has been compelled to vacate.

The father of Theodore P. Keller was Theodore C. Keller of Chicago, who died testate September 6, 1930, a resident of Cook county, and leaving a substantial estate. His will created a trust fund from which Theodore P. Keller is entitled to receive an income amounting to approximately $4,400 per annum.

The third paragraph of the will devises and bequeaths all the rest, residue and remainder of his estate, subject to certain provisions of the first article, to his wife, Jessie P. Keller, and the National Bank of the Republic of Chicago, as trustees for the uses and purposes therein set forth. Paragraph 7 of the will provides for the payment of the income from the trust fund to the testator's children, including Theodore P. Keller, and provides with respect to the payment of all income: ". . . such payments to be made in installments, as often as found convenient by my trustees, but not less than twice in each year; each installment to be paid personally to the child entitled thereto, and not to be capable of anticipation or assignment." The will was executed about three years after the entry of the divorce decree against Theodore P. Keller. The question for determination is whether the court erred in subjecting this income of Theodore P. Keller to the support of his minor children.

The courts of different jurisdictions are not in harmony on the question of the validity of so-called "spendthrift trusts." In England such trusts are held invalid as unlawful restraints on the alienation of property. *Brandon v. Robinson,* 18 Ves. 429. The courts of some American States have adopted the English rule upon the same reasoning. *Tillinghast v. Bradford,* 5 R. I. 205, and *Smith v. Moore,* 37 Ala. 327, are illustrative. The Supreme Court of the United States, however, gave the weight of its approval to the validity of such trusts in *Nichols v. Eaton,* 91 U. S. 716, the Supreme Court of Massachusetts likewise in *Broadway Nat. Bank v. Adams,* 133 Mass. 170, and the Supreme Court of Pennsylvania in *Overman's Appeal,* 88 Pa. St. 276. These earlier decisions and many others from courts of different jurisdictions are discussed in Professor Gray's treatise on "Restraints on the Alienation of Property" published in 1883. The author presents with vigor arguments against the validity of such trusts as being contrary to good morals and against public policy. These objections, however, have not generally prevailed in American jurisdictions, which have usually approved such trusts as valid. The Supreme Court of Illinois declared in favor of the validity of such trusts in *Steib v. Whitehead,* 111 Ill. 247, decided in 1884. From that time the courts of this State have consistently adhered to the view that trusts of this kind are valid, as in *Congress Hotel Co. v. Martin,* 312 Ill. 318, where such trust was held valid although consisting of property far exceeding the amount necessary to maintain the beneficiary according to her station in life. In *Hopkinson v. Swaim,* 284 Ill. 11, where such a trust created in favor of a daughter and which provided that the property should be "exempt from the power and control of any husband and from liabilities for any debts or engagements," was held valid. In *Hartley v. Unknown Heirs of Wyatt,* 281 Ill. 321, the court said it was not neces-

sary to use the word "spendthrift" in order to create such a trust, nor was it necessary that the writing should contain an express provision against the alienation of the trust property. "If," said the court, "it appears from the whole will that the testator intended to create such a trust, such an intention will be given effect." Cases to the same effect are *Bennett v. Bennett,* 217 Ill. 434; *Wallace v. Foxwell,* 250 Ill. 616; *Jouvenat v. Continental Nat. Bank & Trust Co.,* 253 Ill. App. 400.

However, in the States affirmatively adhering to the doctrine of the validity of such trusts, there has appeared a determination to limit the cases in which the rule will be recognized by creating exceptions in certain classes of cases, where it is held upon various theories that the rule should not be applied. In 1 Bogert's Trusts & Trustees, sec. 223, p. 727, the author states: "Great efforts have been made to get courts and legislatures to make exceptions to their doctrine about spendthrift trusts, in favor of certain creditors with peculiarly powerful claims on the sympathy of the courts. Restatement of the Law of Trusts, Tentative Draft sec. 183. To a certain extent these attempts have been successful. Perhaps the most striking example is found in the case of a spendthrift trust for a married man with a wife and children, where there is a failure to support his family, or there has been a divorce with a decree for the payment of alimony by the husband. It has been urged that the duty to support the wife and children is not a debt but a common law obligation placed upon the husband entirely outside contract principles, and attorneys for the wife have also argued that a spendthrift trust for a married man impliedly includes his wife and children as *cestuis,* so that an effort to get part of the income on their part is not an effort to break the trust but to have it carried out. Some support for these

contentions is to be found in the common law decisions.'' A large number of these decisions, too numerous to be reviewed in this opinion, are cited in a footnote.

In Restatement of the Law of Trusts, vol. 1, sec. 157, p. 389, the prevailing doctrine is stated as follows:

''Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

''(a) by the wife or child of the beneficiary for support, or by the wife for alimony;

''(b) for necessary services rendered to the beneficiary or necessary supplies furnished to him;

''(c) for services rendered and material furnished which preserve or benefit the interest of the beneficiary.'' In a *caveat* the author states that the enumeration of situations in which the interest of the beneficiary of a spendthrift trust can be reached is not necessarily exclusive.

The leading case holding that such a trust fund may be reached for the support of a wife or child is that of *Moorehead's Estate*, 289 Pa. 542, 137 Atl. 802. The court there concluded, after reviewing all the facts, that it was not the intention of the testatrix to impose such restrictions upon her estate, but other factors tending to the same conclusion were that such exception would be contrary to public policy as releasing the husband from his primary obligations to society to support his family, and also destructive of the legal unity which common law recognized as existing between husband and wife. The latter argument does not seem quite persuasive when, as here, the trust is created after the unity of the family has been destroyed by a decree of divorce, but the biological reasons which demand that a father support his children

is not destroyed by such a decree and was given due weight in the opinion of the court.

The courts of California have reached a contrary conclusion. *San Diego Trust & Savings Bank v. Heustis*, 121 Cal. App. 675, 10 P. (2d) 158, decided in 1932. The opinion of the court there considers and disapproves of the reasoning in the *Moorehead* case and describes the Pennsylvania court as "laboring" to reach the result. The question, so far as the briefs disclose, has never been considered by the Supreme Court of Illinois, but that court and the Appellate Courts have indicated in no uncertain terms that the duty of a father to support his children is not regarded in the light of a merely contractual obligation. On the contrary, the nurture and the training of children of divorced parents in *Kelley v. Kelley*, 317 Ill. 104, were held to be matters of vital interest to the State, the court pointing out that children are of the parents' blood, that it is not their fault that their parents may have been divorced, and that a divorce decree does not destroy their right to be given care "by those who brought them into the world until they are old enough to take care of themselves." That doctrine is expressed in innumerable cases of which we cite a few. *Brand v. Brand*, 252 Ill. 134; *Walgreen Co. v. Industrial Commission*, 323 Ill. 194; *Union Bank of Chicago v. Wormser*, 256 Ill. App. 291. Indeed, the failure of a father to support his minor children under certain circumstances has been denounced by the legislature of the State as a crime. Ill. State Bar Stats. 1935, ch. 38, ¶ 2. There are many cases in the books which have sustained convictions for such offence in this and other States. 22 A. L. R. 795, with Bluebook of Supplemental Decisions. *People v. Baker*, 222 Ill. App. 451.

Substantially the same question here presented was raised in *England v. England*, 223 Ill. App. 549. It was there contended by the trustees that the income

from a spendthrift trust which had been created by the last will and testament of Albert T. England could not be subjected to the lien for alimony against the beneficiary, his son, Albert C. England. The opinion, based upon the theory that an intention on the part of the trustor to exclude the wife was not apparent from a consideration of the whole instrument, held that the obligation of the husband to support the wife was not founded upon a debt or contract but was a social obligation based on public policy and for the good of society.

In the later case of *Tuttle v. Gunderson*, 254 Ill. App. 552, the claim of a wife for alimony and for an allowance for the support and maintenance of her minor child from the proceeds or increment of a fund which had been left in trust to her husband was upheld as against the trustees, although the trust provided that the income and increment should be paid to the beneficiary "in person and not upon any written or verbal order, nor upon any assignment or transfer" by the beneficiary. The court reviewed the authorities in this and other States and said:

"The principles stated in *Moorehead's Estate,* in so far as they apply to the instant case, are in accord with *England v. England.* In the notes to *Re Moorehead,* 52 A. L. R. 1259, the author says: 'Except where the trust was a spendthrift trust of the strictest sort, requiring the income to be paid to the beneficiary in person, and no one else (as in *Board of Charities & Correction v. Lockard* (1901) 198 Pa. 572, 82 Am. St. Rep. 817, 48 Atl. 496), the courts have uniformly construed provisions for the protection of the beneficiary from the claims of creditors or the consequences of his own improvidence, as not preventing the income of the trust from being subjected to the support of the beneficiary's wife and minor children. See *England v. England,* (Ill.) *supra; Gardner v. O'Loughlin* (1912), 76 N. H. 481, 84 Atl. 935; *Eaton v. Eaton* (1924), 81

N. H. 275, 35 A. L. R. 1034, 125 Atl. 433, s. c. on subsequent appeal in (1926), 82 N. H. 216, 132 Atl. 10; *Pruyn v. Sears* (1916), 96 Misc. 200, 161 N. Y. Supp. 58; *Re Morehead* (reported herewith) *ante,* 1251; *Decker v. Directors of Poor* (1888), 120 Pa. 272, 13 Atl. 925; *Board of Charities & Correction v. Moore* (1888), 6 Pa. Co. Ct. 66, 19 Phila. 540, 45 Phila. Leg. Int. 216; *Board of Charities & Correction v. Kennedy* (1894), 3 Pa. Dist. R. 231, 34 W. N. C. 83.' After a careful consideration of the instant contention of the appellants, we have reached the conclusion that it is without merit.''

The trustees here rely upon section 49 of the Chancery Act (Cahill's Ill. Rev. St. 1933, ch. 22) but the provisions of that statute are applicable only to merely contractual obligations.

The trustees contend also that even if a creditor of a beneficiary of a trust could obtain satisfaction in equity out of funds in the hands of the trustees, it would be improper to decree future payments by the trustees which the beneficiary did not then owe to the creditor. In this class of cases the court retains jurisdiction and will be able to decide each situation as it arises upon equitable principles.

We hold that because the will creating this trust fund does not expressly disclose an intention to the contrary, because the claim for support of children is one which transcends any contractual obligation, and because of the recognition in our law of the unity of the family, the court did not err in subjecting the income from this trust fund to the support of the minor children of the beneficiary. The weight of authority sustains this determination. Griswold, Spendthrift Trusts, 1936, p. 292, ch. V, secs. 331–340.

The decree is therefore affirmed.

*Affirmed.*

McSurely, P. J., and O'Connor, J., concur.