**Martha SEIDENBERG, Plaintiff,**

v.

**Elijah M. SEIDENBERG, Defendant.**

**Civ. A. No. 5686–52.**

United States District Court
District of Columbia.

Dec. 1, 1954.

Harry S. Klavan, Washington, D. C., for garnishees, for the motion.

Allan Fisher, Washington, D. C., for plaintiff, opposed.

HOLTZOFF, District Judge.

This case involves a spendthrift trust, i. e., a trust to pay the income to a named beneficiary, coupled with a provision that the beneficiary's interest shall not be transferable by him and shall not be subject to the claims of his creditors.[1] The question presented is whether such income may be reached for the purpose of paying maintenance and alimony awarded by a court. The point is one of novel impression in the District of Columbia and, therefore, a somewhat detailed dis-

---

1. Restatement of the Law of Trusts, Sec. 152(2).

cussion of the subject seems appropriate. This action was brought by a married woman against her husband for custody and maintenance of their five minor children. After a trial on the merits, the court rendered final judgment awarding custody of the children to the plaintiff and directing the defendant to pay to the plaintiff the sum of $20 a week, as maintenance for the benefit of the children. The defendant being in arrears in the payment of this award, the plaintiff instituted garnishment proceedings against Fannie Seidenberg and two other persons. The garnishees answered that under the provisions of the will of Harry Seidenberg, the defendant's father, the sum of $10,000 was left to them in trust to pay this amount to the defendant at the rate of $175 per month. They further alleged that the will provided that no assignment of these funds would be valid, and also, that neither the principal nor the income could be attached by process of attachment, garnishment, or other legal proceeding while in the hands of the trustees. They asserted that by these provisions the testator created a spendthrift trust, the proceeds of which were not subject to attachment or garnishment. The plaintiff filed a traverse to the answer of the garnishees. The matter comes before the court on a motion of the garnishees to quash the traverse.[2] The facts are stipulated and raise the question of law whether the income of a spendthrift trust may be reached for the payment of maintenance of minor children.

The pertinent provisions of the will of Harry Seidenberg read as follows:

"I give, devise and bequeath unto my dear wife, Fannie Seidenberg, and my children, Jacob Seidenberg, and Doris Louise Seidenberg Pazornick, the sum of Ten Thousand Dollars ($10,000.00) in trust, nevertheless, upon the following trust and uses:

"(a) If my son, Elijah M. Seidenberg, survives me, then and in that event to pay unto him the sum of of One Hundred Seventy Five Dollars ($175.00) per month, until the sum of Ten Thousand Dollars ($10,000.00) is exhausted.

\*    \*    \*    \*    \*    \*

"(f) No assignment by my said beneficiary, by way of anticipation, shall be valid. The aforesaid payments of $175.00 per month, \* \* \* shall be paid by the trustees, directly to my son, irrespective of any assignment or order, nor shall the principal or income of the said trust become attached by process of attachment, garnishment, or other legal proceeding, while in the hands of the trustees."

Under the law of England, spendthrift trusts were deemed invalid as against public policy, in that they constituted unlawful restraints on alienation and, therefore, limitations on assignments and restrictions against attachments, garnishments, and similar proceedings were held unenforcible.

In the leading case of Brandon v. Robinson, 18 Ves.Jun. 429, 34 Eng.Repts. 379, Lord Eldon ruled that the income of such a trust could be reached by an assignee in bankruptcy. In arriving at this conclusion, the Lord Chancellor observed that it was clear, "that if property is given to a man for his life, the donor cannot take away the incidents to a life estate" (p. 381). He added that the fund must remain subject to the incidents of property and could not be preserved from the creditors.

A similar conclusion was reached in Piercy v. Roberts, 1 My. & K. 4, 39 Eng. Repts. 582, in which it was held that an attempt to continue the beneficiary in the enjoyment of the income of such a trust, after he had become insolvent, was in fraud of the law.

Gray, in his celebrated treatise on Restraints on the Alienation of Property, 2d Ed. p. 159, summarizes the English law on this point as follows:

---

2. D.C.Code, Title 15, Sections 301–306, 309.

"If the income of trust property is to be paid to A. during his life, a direction that it shall be paid into his own hands, or that he shall not alienate or anticipate it, or that it shall not be liable for his debts, is void."

It seems to be of questionable morality to sanction the payment of a regular, periodic income to a person, an income that he has not earned, and at the same time to insulate him from his creditors and to permit him to incur debts freely without any legal obligation to pay them out of this fund. To do so tolerates the creation of a small, favored group of weak individuals through the misguided pampering of well-to-do parents or other relatives. No decent, self-respecting human being, with any principles at all and with any strength of character whatever, should be willing to accept such a privilege, if indeed a privilege it may be called.

Although not allowed to gain a foothold in the country of its origin, nevertheless, the undemocratic doctrine that gives effect to spendthrift trusts acquired general acceptance in the United States.[3] Perhaps the explanation of this strange anomaly may be found in the fact that this development originated in this country in an era when the social consciousness regarded with leniency and sympathy the plight of a debtor who struggled under a heavy burden of pecuniary obligations, and viewed with a jaundiced eye the creditor who sought to exact his just due. The question presented in this case, however, is not the validity of a spendthrift trust as against the rights of creditors generally, but a much narrower query, whether the income of such a trust may be reached for the payment of maintenance of minor children.

On this point the Restatement of the Law of Trusts, Section 157, contains the following provision:

"Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

"(a) by the wife or child of the beneficiary for support, or by the wife for alimony; * * *."

The foregoing statement is subject to the criticism that it is far too broad and does not accurately represent the state of American authorities. It seems to be an enunciation of wishful thinking on the part of the draftsmen of what in their opinion the law should be, rather than a formulation of what the law actually is. The States are in fact divided on this point, although the weight of authority preponderates in favor of permitting the income of a spendthrift trust to be reached by the beneficiary's wife or children for the payment of alimony or maintenance.

The leading decision on this subject is In re Moorehead's Estate, 289 Pa. 542, 551–552, 137 A. 802, 806, 52 A.L.R. 1251. In that case a husband's attempt to assert an exemption in respect to the income of a spendthrift trust as against a claim for alimony, was overruled in no uncertain terms. The court forcefully enunciated the following salutary and wholesome principles, that deserve to be quoted at length:

"Public policy is not so vague and wavering a matter as not to be rightly invoked in a case of this character, where the degenerating tendencies of marital relations of the present day are so faithfully exemplified by one who comes into court and demands judicial condonation of his violations of law. In every civilized country is recognized the obligation, sacred as well as lawful, of a husband to protect and provide for his family, and to sustain the claim of the husband in the case at bar would

3. Nichols v. Eaton, 91 U.S. 716, 23 L.Ed. 254; Gray, Restraints on the Alienation of Property, 2d Ed. Secs. 176–178; Restatement of the Law of Trusts, Sec. 152.

In some States the matter is governed by statute and, therefore, such jurisdictions need not be considered for the purposes of this discussion.

be to invest him with a right to be both a faithless husband and a vicious citizen. This case reaches beyond the concern of the immediate parties to it. It affects the status of the family as being the foundation of society and civilization, and hence in a very certain sense is of wide public concern.

\* \* \* \* \* \*

"There is still another great factor to be considered in this case, the legal unity of husband and wife, and it is a unity which must continue to be recognized, however much modern laws enlarge the separate rights and privileges of each. And with this merger of existence and interests, established from the most ancient times in all civilized lands, how can it be claimed that the status of creditor and debtor is established between them, when it is a question of the mutual performance and fulfillment of fundamental duties as husband and wife, which the obligations of humanity impose and the safety of society requires from both?"

The court pointedly added that "property available for the purposes of pleasure or profit should be also answerable to the demands of justice." While the court indicated that under the peculiar circumstances of the case, the creator of the trust could not have intended to exempt the income from the claim of the wife to alimony, it also predicated its decision on the broader ground that such an income should generally be subject to the rights of the wife and children to support.

The rule that the income of a spendthrift trust may be diverted to the support of the beneficiary's wife and minor children, has been followed in a number of other States, among them Illinois, Oregon, and Nebraska, Keller v. Keller, 284 Ill.App. 198, 1 N.E.2d 773; Cogswell v. Cogswell, 178 Or. 417, 446, 167 P.2d 324; In re Will of Sullivan, 144 Neb. 36, 40, 12 N.W.2d 148. Maryland has likewise adopted the same doctrine. It must be borne in mind that the decisions of Maryland courts on questions of common law and equity jurisprudence, necessarily carry great weight in this jurisdiction, because the District of Columbia derives its common law and principles of equity through Maryland. In Safe Deposit & Trust Co. v. Robertson, 192 Md. 653, 663, 65 A.2d 292, 296, it was held that while spendthrift trusts are valid as against contract creditors, the exemption should not extend to claims for support or alimony. The court summarized its views as follows:

"We think the rule that gives legal effect to spendthrift provisions as against contract creditors should not be extended to claims for support or alimony. In such situations the wife is a favored suitor, and her claim is based upon the strongest grounds of public policy."

On the other hand, some jurisdictions, among them California, Iowa, and Minnesota, hold that the income of a spendthrift trust is not liable for the payment of alimony or maintenance of a wife or minor children, and place such claims on a par with debts, San Diego Trust, etc., Bank v. Heustis, 121 Cal.App. 675, 683 et seq., 10 P.2d 158; Roorda v. Roorda, 230 Iowa 1103, 1107–1108, 300 N.W. 294; Erickson v. Erickson, 197 Minn. 71, 77, 266 N.W. 161, 267 N.W. 426.

The modern trend in the direction of applying the income of spendthrift trusts to claims for alimony and maintenance, is graphically illustrated by the development of the law of Wisconsin on this point. In Schwager v. Schwager, 7 Cir., 109 F.2d 754, which was decided under the law of Wisconsin, it was held by a vote of two to one, that in the absence of any decision of the highest court of that State on this point, the income of a spendthrift trust should be deemed exempt from the rights of a wife and minor children to support. The views of the protagonists of this doctrine are set forth in the majority opinion as follows:

"It would serve no good purpose for us to enter into a castigation of the husband for his plain and apparently willful disregard of an obliga-

tion imposed upon him by the law of Wisconsin and, in fact, by the laws of all civilized jurisdictions. No doubt there is a thoroughly established public policy which imposes such obligation upon a husband. We are convinced, however, that there is nothing in such policy which requires or, in fact, permits the destruction of a spendthrift trust under the circumstances presented. In the first place, the policy that a person may dispose of his property according to his own wishes, is equally well established. In the instant case, for instance, the testatrix was under no obligation to her son's wife and children. She was under no obligation to bequeath her property to her son in trust or otherwise. She was at perfect liberty to give it all to a stranger had she so desired. Being thus empowered, it is difficult to ascertain by any ordinary process of reasoning, how or why she should be precluded from disposing of it as she did. The wife and children were not damaged—they were no worse off than before. They were deprived of no means afforded by the law to enforce the duty imposed upon the husband for alimony and support." 109 F.2d at pages 759–760.

The dissenting opinion in that case emphatically and eloquently summarized the contrary position, which, it is believed, today represents the greater weight of authority, 109 F.2d at page 763:

"it would seem not unlikely that the various states (including Wisconsin) which have not spoken, may, in the light of the difference of opinion (not limited to judicial opinion), refuse to sanction a scheme whereby a spendthrift may live in comfort (or even luxury) and flout the obligations which he owes to the children he brought into existence or to a society which today humanely assumes a keen interest in their welfare as well as in the wife who has been deserted. It is not at all unlikely that the courts of the states which have not spoken may conclude that a provision of a spendthrift trust, which exempts the trust from the claims of alimony and children's support, is against public policy."

About three years later, the Supreme Court of Wisconsin had occasion to speak on this subject in Dillon v. Dillon, 244 Wis. 122, 11 N.W.2d 628. It distinguished the Schwager case, which has just been discussed, and adopted the rule that the income of a spendthrift trust might be reached to meet the claims of a wife and minor children for support. In so doing it relied largely on the Pennsylvania case of In re Moorehead's Estate, supra, and quoted at length from the opinion.

The family is the foundation of society. The duty of a married man to support and protect his wife and children is inherent in human nature. It is a part of natural law, as well as a requirement of the law of every civilized country. It is not an ordinary indebtedness, such as a contractual obligation or a judgment for damages arising out of a tort. It is a responsibility far superior to that of paying one's debts, important as the latter obligation is. No part of a man's property or income should be exempt from meeting this liability, for he is under at least as great a duty to provide shelter, clothing, and food for his immediate family as he is to furnish them for his own person. The law should not regard with complacency any man who repudiates or ignores this obligation, which is instinctive in mankind, and should not permit him to flout it with impunity.

■ On the basis of the demands of natural justice, as well as on principle and the greater weight of authority, the court reaches the conclusion that, irrespective of the validity of a spendthrift trust, which need not be passed upon in this case, the income of such a trust may be reached for the purpose of meeting the claims of a wife and minor children for alimony and maintenance.

Accordingly, the motion to quash the traverse is denied, and an appropriate order and judgment may issue in accordance with the foregoing views.