In the matter of ANNA M. OWENS, alleged to be a lunatic.

[Submitted November 18th, 1918. Determined November 27th, 1918.]

1. Although an alleged lunatic may have had no fixed purpose to remain in a neighboring state when she went there, her continuous residence for four years, accompanied by her statement that it was her permanent home, renders it impossible to regard her as a resident of this state.

2. Although this court may have jurisdiction to entertain lunacy proceedings in the case of a non-resident lunatic owning property in this state, that jurisdiction should not be exercised unless some unsurmountable obstacle exists preventing the appointment of a guardian by the orphans court of the proper county.

3. Where legal title to lands of a lunatic in this state has passed to another, and where her personalty is in no danger of loss or injury, this court will not appoint a receiver to contest the conveyance of her lands, there being no obstacle to lunacy proceedings in the state of the lunatic's residence.

On hearing on motion in behalf of alleged lunatic to vacate order for commission of lunacy.

*Messrs. Wilson & Carr,* for the motion.

*Mr. Samuel M. Roberts,* opposed.

LEAMING, V. C.

October 2d, 1918, a petition was presented to this court alleging that Anna M. Owens had become so far deprived of her reason as to render her unable to care for herself or her property, and praying for the appointment of a commission in the nature of a writ *de lunatico inquirendo.* Pursuant to the prayer of the petition, commissioners were appointed and the writ was ordered issued on that day. October 18th, 1918, was designated by the commissioners for the hearing and a precept was delivered to the sheriff for that purpose. October 14th, 1918, a petition was presented to this court, signed by the alleged lunatic, for leave to file a special appearance and contest the jurisdiction of the court. On that day an order was made permitting such appearance, staying the inquisition, and fixing November 11th, 1918, for hearing under the special appearance; depositions in behalf of the respective parties were ordered taken in the interim for use at the hearing.

The petition for the writ *de lunatico inquirendo* set forth that the alleged lunatic was the owner of certain real estate in this state and also of some personal property, and that she was then residing temporarily with her daughter in Philadelphia, Pennsylvania, but had no property in that state, and for that reason no similar proceedings had been instituted in Pennsylvania.

The petition of the alleged lunatic sets forth that she is, and for four years preceding, has been a resident of Philadelphia, Pennsylvania, and that she has no real or personal estate in New Jersey; that the real estate referred to in the original petition was sold by her in September, 1918, to John Q. Bonner, of Wilmington, Delaware, for a full consideration; that the deed has been delivered and that the purchaser is in possession; that she is not insane and is capable of managing her own affairs.

The depositions which have been taken render it impossible to regard the alleged lunatic as a resident of this state at this time. About four years ago she was residing with her son, the original petitioner herein, at Palmyra, in this state; at that time she went to live with her daughter in Philadelphia, and has lived there continuously since that time; during that period she has stated to others that that was her permanent home. It may well be, as claimed, that when she first went to Philadelphia she had in mind no fixed purpose to remain there and she may have then even intended to return to Palmyra; but her continuous residence in Philadelphia for four years, accompanied by statements during that period that it was her permanent home, renders it impossible to find as a fact that she is now a resident of this state. Nothing in the testimony indicates that during much of the period referred to the alleged lunatic was without adequate mentality to determine her domicile.

By the first section of our Lunacy act (*2 Comp. Stat. p. 2781*) it is provided that in cases of idiocy or lunacy found in proceedings *de lunatico inquirendo,* the chancellor shall cause a certified copy of the proceedings to be transmitted to the orphans court of the county where such idiot or lunatic may reside, and the orphans court shall thereupon appoint a guardian. This section was first enacted March 1st, 1804. *Bloomf. 117.* Prior to that time guardians in lunacy proceedings were appointed by the chancellor, pursuant to the act of 1794 (*Pat. L. p. 125*), in harmony with the English practice This direction for the appointment by the orphans court of the county of residence necessarily excluded from its operation cases of non-residents. Whether the chancellor possessed jurisdiction in cases of non-residents owning property in this state appears to have been long doubted. In the absence of such jurisdiction on the part of the chancellor no means existed through the medium of lunacy proceedings for the protection of property in this state owned by a lunatic whose domicile was in another state, since the finding of a commission in another state could not be effective as to property in this state in the absence of statutory authority for that purpose. See *In re Neally, 26 How. Pr. 402; In re Perkins, 2 Johns. Ch. 124.* Legislation of that nature appears to have been first enacted in

this state in 1840. *P. L. 1840 p. 27.* That act, the provisions of which are similar, to the provisions of the second section of our present act (*2 Comp. Stat. p. 2783*) provided that when a person residing out of this state should be duly found an idiot or lunatic according to the laws of the place where the idiot or lunatic resided, the orphans court of the county in this state in which any property of such idiot or lunatic should be found, or the ordinary, on production of an exemplified copy of the proceedings, could appoint a guardian.

Together these two sections of our statute provide means in lunacy proceedings for the appointment of guardians by our orphans court for resident lunatics and for non-resident lunatics having property in this state; the former by proceedings initiated in this state; the latter by proceedings initiated in the state of the residence of the lunatic.

*In re Devausney, 52 N. J. Eq. 502,* Vice-Chancellor Green reached the conclusion that, notwithstanding this legislation, the chancellor still has jurisdiction to entertain lunacy proceedings in cases of non-resident lunatics owning property in this state, but says (at *p. 508* of the reported case) : "In my judgment, these [statutory] provisions are so full, and the procedure so simple, that recourse should be had thereto unless there are unsurmountable reasons for not doing so."

In appropriate recognition of the conclusions reached (*In re Devausney*), it must now be held that, although this court may possess jurisdiction to entertain proceedings in lunacy in cases of non-resident lunatics who own property in this state, that jurisdiction should not be exercised unless some unsurmountable obstacle exists which prevents the procedure contemplated by our statute; that procedure is: In cases of non-resident lunatics the primary proceedings shall be taken in the state of domicile and ancillary letters of guardianship issued thereon in this state if the lunatic owns property here; primary proceedings shall be taken here only in cases of residents, and letters of guardianship issued by the orphans court of the county of such residence.

In the present case, it appears from the depositions which have been taken that a conveyance of the real estate of the alleged lunatic was made by her to one Bonner under date of Sep-

tember 30th, 1918—shortly prior to the filing of the petition herein. The purchase was made by Bonner through a real estate agent with whom the property had been listed for sale for a considerable time. This agent has testified that the sale was *bona fide* and for a fair price. Other testimony is to the effect that the price was low. Although the agreement of sale and date of the deed was prior to the institution of these proceedings, the evidence discloses that the money was probably paid and the deed delivered after these proceedings were begun. The proceeds of the sale are now on deposit in a bank in Philadelphia. Whether the purchaser knew, or had any reason to know, that the mental capacity of his vendor was questioned does not appear.

The situation thus presented is that the legal title to the real estate of the alleged lunatic has passed from her to another person. If he has purchased in good faith for a fair price without knowledge or suspicion of any mental incapacity of his vendor, his title cannot be successfully assailed. *Matthiessen & Weichers Refining Co.* v. *McMahon, 38 N. J. Law 536.* Obviously, this court cannot at this time determine the validity of that conveyance in a proceeding in which the purchaser is not a party. The personal property referred to in the petition is of little value and is in the possession of the original petitioner herein and is not in danger of loss or injury. It follows that, inasmuch as the non-residence of the alleged lunatic prevents the appointment of a guardian in this proceeding by the orphans court, pursuant to the direction of our statute and the alleged lunatic resides in a jurisdiction adjacent to this state, and no obstacle exists to prevent lunacy proceedings there, the only possible impelling purpose of retaining the present proceeding appears to be for the future appointment by this court of a receiver or committee in the nature of a guardian, in the event of an affirmative return of lunacy, to the end that such receiver or committee might, if so advised, file a bill to contest the validity of the conveyance.

I am convinced that the retention of the present proceedings for the purpose suggested cannot find adequate justification. No obstacle to the statutory procedure exists. Indeed, con-

venience may be substantially conserved by proceedings in the jurisdiction of domicile of the alleged lunatic, where her witnesses reside, and especially in view of her enfeebled condition of health. Should lunacy be there found a guardian can be easily appointed here pursuant to the provisions of our statute. Should such guardian seek to contest the validity of the conveyance, his power to do so will be without question, and in the meantime the consideration of that sale, now on deposit in a bank in Philadelphia, can be preserved by the guardian of the state of domicile. *In re Dey, 9 N. J. Eq. 181*, Chancellor Williamson, commenting on the exercise of equitable powers in cases of this nature, says: "But I can find no precedent for converting the petition [petition for a commission in the nature of a writ *de lunatico inquirendo*] into a bill in chancery, making a case against third persons, and in this way invoking the action of the court upon matters involving the rights of others not parties to the proceedings. I am not willing to approve this practice unless it can be shown that it has received the deliberate sanction of the court, and on that account should be considered settled."

No costs should be taxed against either party.