[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 242 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 243 
John Wilson Scott, also known as Loveridge Patton Haffner, was on September 1, 1943 adjudicated by the District Court of the United States for the District of Columbia to be of unsound mind and is confined in St. Elizabeth's Hospital, Washington, D.C. His mother, Marion L. Haffner, a resident of New Jersey, died testate and her will was probated in Essex County. Under its terms, her son, who evidently was competent when the will was executed, is a beneficiary under a trust, being entitled to income for life, and, upon his death, the residue is payable to his heirs. John Wilson Scott was married, but his wife obtained a divorce in Wyoming in 1940. A son born of the marriage, Michael Loveridge Scott, now about 12 years of age, resides with his mother in California. She had worked to support herself and her child, but is now alleged to be indigent and has incurred obligations for the support and health of her son. She has applied to the trustees of the trust estate for utilization of part of the income for the support and maintenance of the child.
The trustees have filed the complaint in this cause, alleging the foregoing facts. They also allege that they are using the income for the care of the incompetent; that they now have an accumulation of surplus income of about $750; that they reasonably expect that future income will be more than necessary for the support of the incompetent; that they recognize the obligation of the incompetent to support his son and are willing to use the funds for that purpose, but are in doubt of their right to do so; and pray for instructions. The evidence establishes that as of December 31, 1947, the balance of corpus in the trust fund was $30,519.37 and the balance of income, $1,645.
The support of a child is the father's first duty. That duty is continuous. Royce v. Royce, 124 N.J. Eq. 469 (E. A.
1938). In Osborn v. Allen, 26 N.J. Law 388 (Sup.Ct.
1857), *Page 245 
the court said: "The duties of parents to their children, by law of nature, rests equally upon both. It is the duty alike of each parent to maintain, protect and educate their children. * * * In regard to the maintenance of children, the only obligation expressly imposed by law, that of maintaining poor children not able to work, rests alike upon both parents. Nix, Dig. 614,Sec. 26, 1 Bla. Comm. 448. There is, however, this distinction recognized by the authorities between the obligation of the father and that of the mother to maintain their infant children, viz., that the father is bound to maintain his children during their minority, though the children have ample property for their support, while no such obligation rests upon the mother."
In In re Ganey, 93 N.J. Eq. 389 (Ch. 1922), affirmed94 N.J. Eq. 502 (E. A. 1922), the court said: "Both parents being alive, it is the duty of the father to support and maintain the minor child, and upon his death that duty devolves upon the mother (Osborn v. Allen, 26 N.J.L. 388; Alling v. Alling,52 N.J. Eq. 92), but this court has no jurisdiction to compel a parent to support an infant child. Alling v. Alling, supra.
Neither parent is legally compellable to perform such duty, except in the manner pointed out by the statute." R.S. 2:204-1et seq.
This duty does not depend on the mental competency of the parents; though, of course, it may not be enforceable against the person of an incompetent parent. A Court of Chancery will protect and safeguard the rights of both incompetents and infants.
Two statutes enacted by the Legislature pertaining to mental incompetents have relevancy here, viz.:
"R.S. 3:21-4. Order fixing expenditure, c.
"The guardian, spouse, or a child or any person on behalf of a child of a resident or nonresident mental incompetent, may apply to the Court of Chancery * * * by verified petition * * * for an order directing the amount the guardian may expend yearly for the support and maintenance of the mental incompetent, his household, family, spouse, child or children, out of his personal estate, and the income thereof * * * or otherwise directing the guardian in relation to the care and management of the mental incompetent or his *Page 246 
estate, and in relation to the support and maintenance of the mental incompetent, his household, family, spouse, child or children."
R.S. 3:23-1 provides that where a power, discretionary or otherwise, is or shall be vested in or given to a mental incompetent, the Court of Chancery may authorize his guardian to exercise the power of consent.
In the instant case, the incompetent is a non-resident of this State and has been adjudicated to be of unsound mind in the District of Columbia. So far as the record discloses, while the primary proceedings relating to the incompetency were taken in the jurisdiction where he was committed, no ancillary letters of guardianship have been issued here, but these could be obtained since the property is here. In re Owens, 90 N.J. Eq. 37(Ch. 1918).
But for his incompetency, the father could, of course, consent to the expenditure of the moneys for the support and maintenance of his son. It is not unreasonable to assume that if the incompetent could consent, he would do so. R.S. 3:23-1 was enacted to empower the court to authorize the guardian to consent to that which the court reasonably believes the incompetent himself would consent, if he were of sound mind. Brooklyn TrustCo. v. Dais, 122 N.J. Eq. 182 (Ch. 1937). In re Degnan,122 N.J. Eq. 470 (Ch. 1937). Bahr v. Cooper, 141 N.J. Eq. 584 (Ch. 1948).
The difficulty in this case arises from the fact that there is no direct application under R.S. 3:21-4 by any of the persons specified by said statute, namely, the guardian, spouse, child or any person on behalf of a child, of a mental incompetent. The incompetent has no general or ancillary guardian in this state. His guardian ad litem appointed by the court argues against the use of the trust funds for the child's support. The incompetent has no spouse. The child appears in this cause as defendant by guardian ad litem appointed by this court. And, strictly speaking, the application is not pursuant to the statute. Plaintiffs are trustees of the property and are not guardians or trustees of the person of the incompetent. However, in the view I have taken, it may be considered that plaintiffs are making *Page 247 
application on behalf of the child within the meaning of the statute.
It is not the judicial function to rewrite a statute, neither to enlarge nor to contract it, and we may not under the guise of interpretation extend it to include persons not intended to be included. Adams v. County of Atlantic, 137 N.J. Law 648 (E. A. 1948). The aim of the legislation referred to was to supply an inadequacy, to provide a method whereby the Court of Chancery could direct the amount to be expended "in relation to the care and management of the mental incompetent or his estate, and in relation to the support and maintenance of the mental incompetent, his household, family, spouse, child or children." Since the purpose of construction is the ascertainment of meaning, courts look to the background of statutes and the good to be designed. City Affairs, c. v. Department of Taxation,134 N.J. Law 198 (Sup.Ct. 1946); affirmed 134 N.J. Law 614(E. A. 1946). In Clarkson v. Ley, 106 N.J. Law 380 (E. A. 1930), the court said: "In the interpretation and construction of statutes the primary rule is to ascertain and give effect to the intention of the legislature, and the intention of the legislature is to be ascertained not merely from the language of the act taken as a whole, but * * * from the application of the act to existing circumstances and necessities." Mr. Justice Holmes, in United States v.Whitridge, 197 U.S. 135, at page 143, declared: "The general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down", and in Olmstead v.United States, 277 U.S. 438, at page 469, he chided courts for being "apt to err by sticking too closely to the words of a law where those words import a policy that goes beyond them." It is my impression that the several legislative enactments are sufficiently comprehensive to include the plaintiffs within the class of persons who might apply to this court for an order directing the amount which they may expend out of the funds in their hands, for the support and maintenance of the child of the incompetent, especially in the instant case, when the property is in this State and the plaintiffs are accountable to the courts of this State for the administration of their trust. *Page 248 
It would be unthinkable that this court be powerless to grant support to a minor child in need of funds within the control of the court, of which the income belongs to the father and the corpus will ultimately belong to the child. The answer is found in the expression of Judge Cardozo in Graf v. Hope HoldingCorp., 254 N.Y. 1, which has been quoted with approval by the courts of this State: "There is no undeviating principle that equity shall (be) * * * unmoved by an appeal ad misericordiam,
however urgent or affecting. The development of the jurisdiction of the chancery is lined with historic monuments that point another course. * * * Equity follows the law, but not slavishly nor always. If it did, there could never be occasion for the enforcement of equitable doctrine. * * * Let the hardship be strong enough, and equity will find a way, though many a formula of inaction may seem to bar the path."
The will under which the trust in the instant case is created contains a spendthrift clause, prohibiting payment to creditors of the cestui, and it is urged that this provision bars the application. The obligation of a parent for the support of his child does not arise from a creditor-debtor relationship. It is not a debt within the contemplation of the testatrix or the interpretation of the clause.
The needs of both the incompetent and the minor are to be considered. The requirements of a growing child vary, while the expenditures for the incompetent are comparatively fixed. As heretofore stated, the plaintiffs have an accumulated surplus of income amounting to approximately $750, and from past experience expect that the future income will be larger than necessary for the support of the incompetent. It would seem most desirable in the interests of both parties that no rigid formula be set up. The plaintiffs will be authorized to pay to the mother out of the accumulated surplus income, the sum of $600, in one payment now or in such instalments as the plaintiffs may in their discretion otherwise determine, to be used by the mother for the support and maintenance of the child for the coming year, with leave to apply thereafter for such further or other order as the court may then consider advisable. *Page 249