## SAFE DEPOSIT & TRUST CO. OF BALTIMORE
### *v.* ROBERTSON

[No. 123, October Term, 1948.]

654

*Decided March 31, 1949.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*George M. White*, with whom were *White & Page* on the brief, for the garnishee.

*William F. McDonald*, with whom was *John W. Marcuse* on the brief, for Mary Anna Robertson.

HENDERSON, J., delivered the opinion of the Court.

Mary Anna Robertson, obtained a divorce *a vinculo* from her husband, John L. Robertson, Jr., in the Circuit Court of Baltimore City, on April 6, 1938. The decree ordered the defendant to pay the complainant $53 per month as "permanent alimony * * *, subject to the further order of this court in the premises." Subsequently, he took up his residence in New York and allowed the alimony payments to fall in arrears. On June 17, 1948, she filed a petition for judgment on the award and obtained an order to show cause, which appears from the docket entries to have been served on the defendant. Upon petition of the defendant, the time for showing cause was extended, but the defendant did not do so, and thereafter his solicitor struck out his appearance. On August 6, 1948, she obtained an order reducing the arrears to judgment in the amount of $4,229, and an attachment was laid in the hands of the appellant on October 8, 1948. The garnishee filed a motion to quash, reciting that the only assets in its hands consisted of accrued income payable to John L. Robertson, Jr., under valid spendthrift trusts created by the will of his father, John L. Robertson, Sr., and the will and a deed of trust of his mother, Lily D. Robertson.

The provison in the will of John L. Robertson, Sr., who died in 1937, was that "all payments are to be made into the hands of the beneficiaries direct and not into the hands of others, whether claiming by their authority

or otherwise, this provision, however, not to prevent payments to any guardian or committee of any beneficiary, nor to limit any discretionary powers lodged in said trustees under this my will, nor to prevent the deposit of funds payable to beneficiaries to their credit in any bank or other financial institutions, nor to prevent the application by the trustee of the net income of any minor or incapacitated beneficiary to his or her support, maintenance and education,—the authority to so apply the income of any such beneficiary being hereby conferred upon said trustee."

The provision in the deed of trust, executed by Lily D. Robertson in 1941, was that: "All payments hereunder (whether of income or principal) are to be made into the hands of the respective beneficiaries direct and not into the hands of others, whether claiming by their authority or otherwise, without power of anticipation and without being subject to execution or attachment; this provision, however, not to prevent payments to any guardian or committee of any beneficiary, nor to limit any discretionary powers lodged in said trustee in regard to expenditures out of principal or otherwise under this instrument nor to prevent the deposit of funds payable to beneficiaries to their credit in any bank or other financial institution, nor to prevent the discretionary application by the trustee of any funds due to or authorized in respect to any ill, minor or otherwise incapacitated beneficiary, to his or her support, maintenance, education and care, nor in any otherwise to limit or restrict any discretionary powers lodged in said trustee under the provisions of this instrument." An identical provision was incorporated in the will of Mrs. Robertson, executed in 1939, which became effective upon her death in 1947. In none of these instruments was there any direct reference to Mary Anna Robertson, as a beneficiary or otherwise.

The chancellor overruled the motion to quash, and signed an order directing the garnishee to bring into court all the funds due the judgment debtor and pay the

same to him in open court, on December 6, 1948, on which date John L. Robertson, Jr., was notified by registered mail to appear. He declined to do so. It was further ordered that, if he did not appear, the garnishee should pay over the funds to the clerk of the court "until all of the arrears of alimony due by him * * * be fully paid and satisfied." From that order both parties have appealed. No question is raised as to the validity of the judgment or attachment, from a procedural point of view. *Cf. Langville v. Langville,* 191 Md. 102, 109, 60 A. 2d 206, 209; *Keen v. Keen,* 191 Md. 31, 60 A. 2d 200; *Leberstein v. Leberstein,* 186 Md. 25, 45 A. 2d 753; *Marshall v. Marshall,* 164 Md. 107, 163 A. 874. It is likewise conceded that the decree of April 6, 1938, was for alimony in a strict sense, and not based upon any agreement of the parties.

The chief question presented is to what extent, if any, the rule prohibiting attachment in the case of spendthrift trusts is relaxed when the claim is for alimony. A subsidiary question relates to the form of the relief granted by the chancellor's decree.

The appellant relies strongly upon the case of *Bauernschmidt v. Safe Deposit and Trust Company,* 176 Md. 351, 354, 4 A. 2d 712. In that case Mrs. Bauernschmidt obtained a divorce from her husband in California, and a decree for separate maintenance pursuant to an agreement between the parties. She brought a non-resident attachment proceeding here to recover arrears out of the income due him under two spendthrift trusts. The plaintiff, invoking the rule of comity, argued that in California an award based on an agreement was nevertheless considered to be alimony, citing *Miller v. Superior Court,* 9 Cal. 2d 733, 72 P. 2d 868, although in *Canfield v. Security First National Bank,* 8 Cal. App. 2d 277, 48 P. 2d 133, earlier cases, it was held that the income from a spendthrift trust was not attachable on such a claim, apart from statute. Judge Sloan, speaking for this court, said [176 Md. 351, 4 A. 713]: "The plaintiff comes into Maryland and asks this court to do two things, one, to recog-

nize the decree of the California court as alimony; two, to adopt the rule in this State, that being alimony, the income from a spendthrift trust, may be attached to satisfy such a decree." It was held that, whatever it might be termed in California, a decree based upon an agreement is not alimony in Maryland, citing *Dickey v. Dickey,* 154 Md. 675, 141 A. 387, 58 A. L. R. 634 and *Bushman v. Bushman,* 157 Md. 166, 145 A. 488. "The second contention, that the rule respecting the attachability of spendthrift trusts should be relaxed when the claim is for alimony, cannot be entertained here unless we overrule the decisions in the *Dickey* and *Bushman* cases, *supra,* which give to money decrees founded on agreements for support the same dignity, force and status as other debts of record. As we are not ready to overrule those decisions, there is no need to discuss the decisions elsewhere, of the rights of the wife of a spendthrift *cestui que trust.* If the courts of this State had jurisdiction of such a one charged with alimony, by indirection, in contempt proceedings the same end might be accomplished as might be done if the funds were attachable, but then only by the punative force of such procedure."

Since the court found it unnecessary to discuss the rights of the wife of a spendthrift *cestui que trust,* the *determination* of that question was left open. We think the court did not mean to indicate, in the sentence last quoted, that attachment for contempt would be the only remedy, but merely that it would be an equally efficacious one, if the court had jurisdiction of the person charged with payment of alimony. In any event, the statement could not be regarded as more than a dictum. The holding of the court was that a wife's claim based upon an agreement stands upon no higher footing than that of any other creditor.

The validity of spendthrift trusts was established in this state in *Smith v. Towers,* 69 Md. 77, 14 A. 497, 15 A. 92, 9 Am. St. Rep. 398, over the vigorous dissent of Chief Judge Alvey. It was conceded that the English authorities took the other view, and that the English

rule was followed in a majority of the states where the question had arisen up to that time. The court relied upon *Nichols v. Eaton,* 91 U. S. 716, 23 L. Ed. 254, and decisions in Massachusetts, Pennsylvania, Vermont, Connecticut and Kentucky. It was held that the income from a spendthrift trust was beyond the reach of creditors of the *cestui que trust* by any process at law or in equity. The court laid great stress on the fact that deeds and wills are instruments of record, and that if creditors choose to give credit [69 Md. 77, 14 A. 499], "they do so with their eyes open. * * * The hardship to them is one that will surely bring about its own remedy, for the dishonest beneficiary, it is plain, would soon be without credit." In *Jackson Square Loan and Savings Association v. Bartlett,* 95 Md. 661, 663, 53 A. 426, 427, 93 Am. St. Rep. 416, it was said: "it is not against the policy of the law to give by will to a beneficiary an equitable right to the income of trust property for his life, without the power of anticipation on his part, and to the entire exclusion of his alienee or creditor." This rule has been followed in other cases, and even extended to cover principal as well as income. *Medwedeff v. Fisher,* 179 Md. 192, 17 A. 2d 141, 138 A. L. R. 1313 and cases cited. However, it has been held that a married woman could not create a trust that would place her property beyond the reach of her own creditors. *Brown v. McGill,* 87 Md. 161, 39 A. 613, 39 L. R. A. 806, 67 Am. St. Rep. 334. And in *Fetting v. Flanigan,* 185 Md. 499, 510, 45 A. 355, 174 A. L. R. 301, it was held that a grantor could not convey property free of his own obligations. It was also held that creditors of a deceased beneficiary could reach funds in the hands of his personal representatives.

In *Mercantile Trust Co. v. Hofferbert,* D. C., 58 F. Supp. 701, 704, Judge Chesnut, after reviewing the Maryland authorities, held that income payable to a beneficiary under a spendthrift trust was subject to a claim of the United States for income taxes due by the beneficiary. He said: "In some of the States where the spendthrift trust is held valid as against creditors, the income of

the beneficiary may nevertheless be subjected to the valid claims of particular classes of persons especially the wife or children of the beneficiary; but there is yet no such Maryland decision. See *Bauernschmidt v. Safe Deposit & Trust Company, supra;* 4 Md. Law Review, pp. 417-423. In *American Law Institute Restatement of Trusts,* § 157, p. 389 it is stated: 'Sec. 157. Particular Classes of Claimants. Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

'(a) by the wife or child of the beneficiary for support, or by the wife for alimony;

'(b) for necessary services rendered to the beneficiary or necessary supplies furnished to him;

'(c) for services rendered and materials furnished which preserve or benefit the interest of the beneficiary.' See also *Griswold, Spendthrift Trusts,* c. 5, p. 289; *Scott on Trusts,* vol. 1, § 157."

In *1 Scott, Trusts,* § 157.1, it is said: "Even though ordinary contract creditors cannot reach the interest of the beneficiary of a spendthrift trust, it has been held in a number of cases that his interest can be reached by his wife or children to enforce their claims against him for support. There are several grounds on which this result has been reached.

"In the first place, it has been held in a number of cases that a provision in the terms of the trust that the interest of the beneficiary should not be subject to the claims of creditors was not intended to apply to dependents of the beneficiary. They are not 'creditors' of the beneficiary, and the liability of the beneficiary to support them is not a debt. Where the trust is created for the support of the beneficiary, it has been held that the fact that he has dependents is to be taken into consideration in determining the amount to which he is entitled under the trust, that the support of a person includes the support of those whom it is his duty to support. There have been suggestions also that his dependents are en-

titled to enforce the trust on the grounds that they are included as beneficiaries of the trust. At any rate, there is no difficulty in enforcing their claims for support against the trust estate if the settlor did not show an intention to exclude them.

"Even though it is clear that the settlor intended to exclude the beneficiary's wife and children from enforcing their claims for support against his interest in the trust, it has been held in some cases that they are not thereby precluded from reaching the trust estate. This result has been reached on the ground that it is against public policy to permit the beneficiary to have the enjoyment of the income from the trust while he refuses to support his dependents whom it is his duty to support. The claim of a wife and dependent children to support is based upon the clearest grounds of public policy. They are in quite a different position from ordinary creditors who have voluntarily extended credit. It would be shocking indeed to permit a husband to receive and enjoy the whole of the income from a large trust fund and to make no provision for his needy dependents * * *."

Similar views are expressed in *Griswold, Spendthrift Trusts,* § 339; *1 Bogert, Trusts and Trustees,* § 223; and *1 Glenn, Fraudulent Conveyances,* Rev. Ed., § 189a.

An examination of the cases on the subject shows a wide divergence of opinion. One of the leading cases, cited by appellee, *In re Moorehead's Estate,* 289 Pa. 542, 137 A. 802, 52 A. L. R. 1251, was followed *in Re Stewart's Estate,* 334 Pa. 356, 5 A. 2d 910, with the assertion that a statute, adopted in that state, merely afforded an additional remedy. However, in *Lippincott v. Lippincott,* 349 Pa. 501, 37 A. 2d 741, the court refused to apply the rule to alimony awarded in a decree of absolute divorce, and seems to have confined the holding in the *Moorehead* case to the claim of a deserted wife. See note *51 Dickinson Law Review* 1. The present Pennsylvania Statute seems to be broader. 20 P. S. § 301.12. In New York, Missouri, Kentucky and a number of other states the matter is controlled by statute. Several states

definitely decline to follow the *Restatement*. *Bucknam v. Bucknam*, 294 Mass. 214, 200 N. E. 918, 104 A. L. R. 774; *Cf. Burrage v. Bucknam*, 301 Mass. 235, 16 N. E. 2d 705; *Erickson v. Erickson*, 197 Minn. 71, 266 N. W. 161, 267 N. W. 426; *Roorda v. Roorda*, 230 Iowa 1103, 300 N. W. 294. In *Schwager v. Schwager*, 7 Cir., 109 F. 2d 754 the court (one Judge dissenting) held that the *Restatement* incorrectly stated the law of Wisconsin (on which the courts of that state had not spoken). In *Dillon v. Dillon*, 244 Wis. 122, 11 N. W. 2d 628, the Supreme Court of Wisconsin distinguished the *Schwager* case on the ground that in that case there was a definite and intentional exclusion by the testatrix, and followed the *Restatement*. To the same effect, see *Clay v. Hamilton*, 116 Ind. App. 214, 63 N. E. 2d 207; *Cogswell v. Cogswell*, 178 Or. 417, 167 P. 2d 324; *Keller v. Keller*, 284 Ill. App. 198, 1 N. E. 2d 773; *In re Sullivan's Will*, 144 Neb. 36, 12 N. W. 2d 148. See also notes, 4 Md. L. R. 417 (1940) ; 28 Va. L. R. 527 (1942) ; 19 Rocky Mountain L. R. 87 (1947).

As we have indicated, the question is an open one in this State. We think the view expressed in the *Restatement* is sound. The reason for the rejection of the common law rule, that a condition restraining alienation by the beneficiary is repugnant to the nature of the estate granted, was simply that persons extending credit to the beneficiary on a voluntary basis are chargeable with notice of the conditions set forth in the instrument. *Smith v. Towers, supra.* This reasoning is inapplicable to a claim for alimony which, in Maryland at least, is "an award made by the court for food, clothing, habitation and other necessaries for the maintenance of the wife * * *." *Dougherty v. Dougherty*, 187 Md. 21, 23, 32, 48 A. 2d 451, 457. The obligation continues during the joint lives of the parties, and is a duty, not a debt. "If there are any installments of alimony unpaid in his lifetime, payment may be enforced by contempt, or by execution (Code, Art. 9, § 29, article 16, § 211) in the manner pointed out in *Marshall v. Marshall*, 164 Md. 107,

163 A. 874." *Kalben v. King,* 166 Md. 632, 639, 172 A. 80, 83. We think the rule that gives legal effect to spendthrift provisions as against contract creditors should not be extended to claims for support or alimony. In such situations the wife is a favored suitor, and her claim is based upon the strongest grounds of public policy. The fact that, as against a resident husband, an award may be enforced by imprisonment for contempt, is no argument against the exercise of a less drastic remedy in a proper case. *Kalben v. King, supra.* In the case at bar it is the only remedy available. Cf. Code, Art. 16, § 16; *Keen v. Keen, supra.* We rest our decision upon grounds of public policy, not upon any interpretation of the instruments in question, which are not broad enough to authorize payments by the trustee for the benefit of a divorced wife.

It has been suggested by Scott, upon limitations in some of the cases cited, that there is perhaps an intermediate view, whereby the dependents of a spendthrift beneficiary can reach only so much of the income as may appear reasonable to the court having control over the administration of the trust. This view seems to be based upon the proposition that if the wife is allowed the full amount of her claim the beneficiary may be left destitute. We think that danger is remote, because in Maryland at least, an alimony decree is always open to revision in the light of changed circumstances or conditions. *Knabe v. Knabe,* 176 Md. 606, 616, 6 A. 2d 366, 124 A. L. R. 1317.

We think the action of the chancellor in overruling the motion to quash was correct, but, in view of what we have said, we see no occasion for impounding the fund with the Clerk of the Court, upon default of the defendant to appear and subject himself to imprisonment for contempt. We think the appellee is entitled to a judgment of condemnation, upon disclosure of the amount of assets held by the trustee, according to the regular course of procedure in attachment on judgment. The

664

order will therefore be affirmed in part and reversed in part and remanded for further proceedings.

*Order affirmed in part and reversed in part and case remanded for further proceedings. Cost to be paid out of the fund.*