ZOUCK ET AL. *v.* ZOUCK
(Two Appeals in One Record)
[No. 90, October Term, 1953.]

288

*Order directing reargument on appeal filed March 17, 1954.*

*Decided April 23, 1954.*

The cause was reargued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*T. K. Nelson Sterling*, with whom was *John Wesley Smith* on the brief, for Henry Charles Zouck.

*W. Thomas Kemp, Jr.*, with whom were *E. Clinton Bamberger, Jr.*, and *Piper & Marbury* on the brief, for the Safe Deposit & Trust Company of Baltimore.

*Thomas J. Kenney* and *Avrum K. Rifman*, with whom were *Walter R. Haile* and *Kenney & Kaiser* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appeal in this case is from a decree ordering Henry Charles Zouck, one of the appellants, to perform the obligation he had assumed in a separation agreement executed several years before by him and his wife, Betty Long Zouck, the appellee. A consideration of the agreement was the dismissal of a bill for divorce by the wife and a cross-bill by the husband, which had been filed in Baltimore, the matrimonial domicile. The agreement provided that the custody of the daughter, then seven years old, would continue in the mother, that the father was to pay $25.00 a week for the support of the child and to assign certain insurance policies to the daughter and execute a will, under which there would pass to her his remainder interests in three trust estates. One of the trust estates was created by deed from the husband's father to the Safe Deposit and Trust Company, Trustee, the other appellant. The husband has not paid a cent since the execution of the agreement in 1949 and has never complied with any other of its terms, having thrown his executed copy into a trash can as he left the lawyer's office where it was signed.

The decree of the lower court directed the husband to pay up the arrearages in a lump sum and, thereafter, to pay $25.00 a week, as well as to assign the policies and to execute the will, as agreed. It awarded custody of the daughter to the mother.

The trust held by the Safe Deposit and Trust Company, as Trustee, is a spendthrift trust. Nevertheless, the court, in order to enforce compliance with its decree, held that jurisdiction of the court attached to the interest of the husband in the trust, both as to principal and income—in other words, that the spendthrift trust could be invaded for the satisfaction of the court's decree.

Both the husband and the wife are non-residents of Maryland. She lives in North Carolina, where she has supported herself and her daughter since the separation. He, an engineer by profession, has worked in various places in this country and abroad. In December, 1951,

knowing that he was to be in Maryland, Mrs. Zouck filed a bill of complaint in the Circuit Court for Baltimore County against her husband and the Safe Deposit and Trust Company, Trustee under the deed of trust from the husband's father. In the bill, it was alleged that although the husband was a non-resident, his "legal residence" was Glyndon, Baltimore County, where his mother resided and where it was customary to send his mail. After the bill was filed, it was learned that Zouck was at the home of a sister in Baltimore City and he was served there with process by a deputy sheriff of Baltimore City. He filed a petition for the sole purpose of challenging the jurisdiction of the court. After a demurrer to the petition was sustained, he sought leave of court to amend the petition to substitute the word "venue" for the word "jurisdiction" wherever the latter appeared in the original petition. The request was denied on objection of the appellee. A demurrer to the bill was over-ruled and an answer was filed, which neither admitted nor denied the allegations of the bill. The answer of the Safe Deposit and Trust Company was to set out the provisions of the deed of trust, which made it a spendthrift trust under the law of Maryland.

Zouck argues that he was not subject to suit in Baltimore County—that if he was suable in Maryland, it was in Baltimore City, where he was when process was served. He relies on Article 75, Section 158 of the Code (1951), which provides that no person shall be sued out of the county in which he resides until a *non est* has been returned in such county. The privilege granted by Section 158 is applicable in equity as well as in law. *Allender v. Ghingher,* 170 Md. 156, 166; *Evans v. Zouck,* 172 Md. 12, 16. It has been stated that its purpose is to afford residents of the State an opportunity to avoid the defense of actions in counties distant from their homes or places of employment. *Woodcock v. Woodcock,* 169 Md. 40, 47. Since Zouck himself sets up and relies on his non-residence, he is in no position to claim the privilege granted by the statutes to residents only.

*Alcarese v. Stinger,* 197 Md. 236. It is clear that a plaintiff can bring a transitory action against a non-resident in any county he selects as long as he can obtain service on the defendant. *Eck v. State Tax Comm.,* 204 Md. 245. See *Harris v. Balk,* 198 U. S. 215, 49 L. Ed. 1023. A bill for specific performance of a separation agreement is *in personam* and transitory in nature. *Hagen v. Viney,* (Fla.) 169 So. 391; and *Scholls v. Scholls,* 201 F. 2d 211. We think, therefore, that Zouck was properly sued in Baltimore County, where it was thought at the time suit was filed that service could be obtained on him. Article 16, Section 221 of the Code (1951) provides that where the court has jurisdiction, but there is doubt as to the residence of the party against whom process is necessary: ". . . several writs may be issued, as of course, to as many counties within the State, . . ." as may be directed; Article 16, Section 230 of the Code (1951) provides: "A court of equity may issue process of any sort . . . to any part of the State." Article 87, Sections 17 and 19 of the Code (1951) provides that the sheriff of any county may serve process in another county and return the same to the court issuing the process. The fact that he was sued in Baltimore County and served in Baltimore City is without significance.

We pass then to the consideration of the merits. In our opinion, the court had power to enforce specifically the agreement between husband and wife and did not abuse its discretion under the established rules when it did so, either as to the arrearages or as to the weekly payments to be made in the future. Traditionally, equity has had, and exercised, jurisdiction as to separation agreements between husbands and wives and, in appropriate cases, has specifically enforced payment of maintenance, including both that due and unpaid and that to be paid in the future. In *Guth v. Guth,* 3 Bro. C. C. 614, 29 Eng. Rep. 729, decided in 1792, the husband and wife had executed a separation agreement, whereby he had promised to pay her one hundred pounds per

annum: "... for the full maintenance of herself and one of her children, named Henry, ..." He fell behind in his payments, pleading inability to pay. The Court held that the agreement could be specifically enforced, saying: "... therefore, let it be referred to the Master, to take an account of what is due for the arrears of the annuity from the date of the receipt, and let the same be paid, together with the growing payments, to her, or such person as she shall appoint, ..." The reporter noted that the Master of the Rolls declared that: "... 'the agreement between the parties ought to be specifically performed and carried into execution:' ..." This decision was the subject of some criticism in English decisions thereafter which considered the validity of separation agreements. Often these turned on the question of whether the agreement was to separate and so void as against public policy or whether equity would interfere with the ecclesiastical courts and their power to order restitution of conjugal rights. Generally, equity would not enforce an agreement so as to require separation, but would require the husband to perform the part of it which related to the payment of the stipulated separate maintenance. The matter was laid to rest by a decision of the House of Lords in the case of *Wilson v. Wilson,* decided in 1848, 1 H. C. L. 538, 9 Eng. Rep. 870. There the decree appealed from directed specific performance of the articles of separation, and the argument was that equity lacked jurisdiction for the performance of such articles. The Lord Chancellor held that illegality as to the part of a separation agreement calling for separation would not make void arrangements for property and maintenance. He advised the affirmance of the whole of the decree appealed from and it was so ordered. A number of the earlier cases were cited in the opinion of the Lord Chancellor. In 1870, the Supreme Court, in *Walker v. Beal,* 9 Wall. (U. S.) 743, 19 L. Ed. 814, approved and enforced the provisions of the articles of separation, whereby the husband estab-

lished a trust fund for the wife, from which she was to receive annual maintenance.

The courts of a number of states have decreed specific performance of agreements for maintenance and support of a wife or a child, or both, directing payment of the amount in arrears and the future payments. In *Burke v. Burke,* Ct. of Ch. (Del.) 86 A. 2d 51, the court in enforcing an agreement for the support of a wife and minor child, said: "Courts favor the enforcement of such an agreement as a matter of public policy. From an early day courts of equity have assumed jurisdiction to enforce separation agreements between husband and wife and have enforced payment of allowances to be paid by the husband to the wife as stipulated in such agreement." In *Whitten v. Bird,* Ct. of Ch. (Del.) 2 A. 2d 83, the court over-ruled a demurrer to a bill which sought specific performance of an agreement for the maintenance of the children of the couple, both as to arrearages and future payments. In *Colburn v. Colburn,* (Sup. Ct. of Pa.) 123 A. 775, the lower court specifically enforced a separation agreement for maintenance of the wife, directing the husband to pay arrearages of several thousand dollars and ordering him to pay the monthly sums required by the agreement. The action of the court was approved on appeal, although it was held that because of a Pennsylvania statute, the defaulting husband could not be imprisoned. In *Weiss v. Weiss,* 73 N. Y. S. 2d 568, affd. 81 N. Y. S. 2d 197, an infant daughter brought an action for specific performance of a separation agreement entered into by her father with her mother to pay monthly sums for her support. A motion for summary judgment was denied, because the daughter was not: ". . . precluded from taking appropriate action upon an agreement of which she was the beneficiary." In *Hagen v. Viney, supra,* the Supreme Court of Florida held that separation agreements are generally enforced in equity and stipulations to pay money to the wife will be there enforced. See also *Cooper v. Cooper,* (D. C.) 35 A. 2d 921; *Almond v.*

*Almond,* (Va.) 4 Randolph 662; *Petty v. Petty,* (Kan.) 207 P. 2d 428; *Orr v. Orr,* (Ark.) 177 S. W. 2d 915; *Edleson v. Edleson,* (Ky.) 200 S. W. 625.   See also annotation in 154 A. L. R. 323; 17 Am. Jur., *Divorce and Separation,* Sec. 537, p. 553; 81 G. J. S., *Specific Performance,* Sec. 86, p. 594.

The Maryland rule does not differ from the general rule.   Authority of equity specifically to enforce separation agreements is at least implicit in the provisions of Article 16, Section 37 of the Code (1951).   The rule was also recognized as early as 1830 in *Helms v. Franciscus,* 2 Bland Chancery 544, 564.   In *Offutt v. Offutt,* 106 Md. 236, the Court found that in consideration of marriage, the husband had contracted to support and take care of his intended wife so long as she should live.   After his death, a bill was brought against those who took from him, praying the appointment of a receiver, for specific performance and general relief.   This Court held, reversing the lower court, that the contract for support requiring annual payments was a proper one to be specifically performed and required its performance.   The cases of *Kriedo v. Kriedo,* 159 Md. 229, and *Gregg v. Gregg,* 199 Md. 662, are distinguishable from and do not control the case before us.   In the *Kriedo* case, it was held that where a mother had expended money for necessaries, for which the father was liable, her remedy was by suit at law for reimbursement and not in equity.   There, there was, and here there is not, any question of fact as to whether the services were rendered or whether they were necessary or the amount of the charge.   Further, there was no contract or agreement in that case.   In the *Gregg* case, the suit was at law for reimbursement for sums expended for necessaries by a deserted wife.   The Court held that the right of a wife to sue her husband was only as to contracts made with him, and one would not arise by implication.   In the case before us, there is a contract by the husband to pay a specified sum.

A court of equity will not require specific performance, as a matter of course. It will evaluate the conduct of the parties, the circumstances and the equities of each particular case. It will not use its discretion to grant the remedy unless its exercise will subserve the ends of justice and the result of its assistance is fair, just and reasonable. We think that the Court did not err in finding the contract in the instant case met the standards necessary for specific performance. Zouck did not deny the execution of the agreement or claim that it was procured by fraud or duress. He did not challenge the fairness of the amount he agreed to pay nor claim that he was unable to pay it, or that its payment would be a hardship on him. A court, of course, is not bound in the amount fixed by the parents for the support of a child. It is free to adopt the amount agreed upon and incorporate it in its decree as its own, but it is not bound to do so. Here, the chancellor followed the permissible course, of adopting the amount agreed upon as fair and reasonable, the expression of such adoption being the enforcement of the contract so providing. Under the facts of the case, we think this course of action was fully justified.

It is earnestly contended by Zouck that whatever the power of the chancellor to require specific performance of the agreement, the court was without authority to authorize invasion of the spendthrift trust for enforcement of the decree. The trustee makes a similar contention and urges beyond this, that as a matter of policy, the courts of Maryland should not lend their aid to the invasion of a domestic spendthrift trust, at the suit of a non-resident wife. The trust, by its terms, terminated in February of this year, when the youngest beneficiary became thirty-five. Whatever the rule elsewhere as to whether a trust for a short term of years is spendthrift as to principal, it seems clear that the language in the deed of trust is sufficient under the Maryland cases to make the trust spendthrift as to principal and income. *Medwedoff v. Fisher*, 179 Md. 192.

Next to be considered then is whether the court erred in decreeing that the spendthrift trust could be reached to satisfy the decree for support, representing as it did, judicial approval of the agreement to pay, as fair, just and reasonable, and so entitled to specific performance. In *Bauernschmidt v. Safe Deposit and Trust Company,* 176 Md. 351, Maryland failed to treat as alimony an award of money granted by a California decree, which confirmed a separation agreement, although such a decree was effective as alimony in California. This Court held that the wife under the California decree was an ordinary contract creditor of the husband, and as such, could not reach his interest in a spendthrift trust. A different result was reached as to alimony in *Safe Deposit and Trust Company v. Robertson,* 192 Md. 653. There, the Court quoted the *Restatement of Trusts,* Section 157, wherein it is set forth: " 'Sec. 157. Particular Classes of Claimants. Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

" '(a) by the wife or child of the beneficiary for support, or by the wife for alimony; . . .' " Judge Henderson said for the Court, quoting 1 *Scott, Trusts,* paragraph 157.1, that: " 'Even though ordinary contract creditors cannot reach the interest of the beneficiary of a spendthrift trust, it has been held in a number of cases that his interest can be reached by his wife or children to enforce their claims against him for support. . .' " There followed a thorough analysis of the grounds on which this decision had been reached and applied in the various jurisdictions. The Court continued: "We think the view expressed in the *Restatement* is sound." The opinion pointed out that alimony is an obligation which continues during the joint lives of the parties and is a duty, not a debt. The opinion continued: "We think the rule that gives legal effect to spendthrift provisions as against contract creditors should not be extended to claims for support or alimony. In such situations

the wife is a favored suitor, and her claim is based upon the strongest grounds of public policy. . . We rest our decision upon grounds of public policy, not upon any interpretation of the instruments in question, . . .". 192 Md. 660, 662-663.

The *Robertson* case was followed by *Hitchens v. Safe Deposit and Trust Company*, 193 Md. 62, where there was a separation agreement entitling the wife to "permanent alimony". This Court held that the trial court was correct in refusing to permit its payment from a spendthrift trust, saying: "The appellant's claim is not based upon a lien or judgment, but merely upon an agreement to pay certain sums as 'permanent alimony,' and to pay one-third of the amount distributed to him after settlement of the estate. . . In any event, we think the claim is barred by the spendthrift trust provisions. . . The appellant is only a contract creditor and has not brought herself within the exception as to alimony laid down in *Safe Deposit & Trust Co. v. Robertson*, 192 Md. 653, 65 A. 2d 292." 193 Md. 67.

The monetary claim in the present case is based, in essence, upon the statutory obligation of the father, declaratory of the common law, to support his child. It is true that under Article 72A, Section 1, of the Code (1951), the obligation of support is jointly and severally that of the father and the mother, but by the agreement in this case, the father bindingly obligated himself to meet that obligation by the payment of $25.00 a week, and to this extent, exonerated the mother from her obligation. The fact that the father has recognized his obligation and has agreed in writing to meet it in a specified amount, does not change his duty to a debt nor does it create the relationship of ordinary contract debtor and creditor between the father and the child, or the father and the mother, as the representative of or trustee for the child. *Marsh v. Scott,* (N. J.) 63 A. 2d 275; *Shaw v. Shaw,* (Del.) 9 A. 2d 258; and *Tullis v. Tullis,* (Ohio) 34 N. E. 2d 212. His obligation remains the same whether it be calculated and required by original

order of court, by voluntary agreement, or by voluntary agreement specifically ordered to be performed by order of court. Nor is it significant that the mother for some years has met the obligation which the father violated, so that the money he promised to pay week by week, would now be paid, under court order, in a lump sum. Paragraph 10 of the separation agreement, after reciting the consideration moving from one to the other of the parties, including the abandonment by the wife of any claim to support, other than the nominal payment of $1.00 a week, sets forth that the daughter was: ". . . the principal beneficiary of the covenants and agreements herein contained." It was further provided that the real consideration was to require the husband: ". . . adequately to provide for the support of his minor child and to provide further for her upon the demise of the husband." The fundamental nature of the support looked for by the agreement is not changed because the husband is now required to pay at one time what he should have paid week by week.

We will not extend the holdings that a wife entitled to support by virtue of an agreement is a contract creditor only, who may not invade a spendthrift trust, but rather, here hold that a contract by a father to support a child, found by a court to be fair and reasonable, and so, judicially decreed to be enforced, is the equivalent of the decree of a court awarding support to the child or alimony to a wife, and as such, comes within the rule of public policy announced and followed in the *Robertson* case. There are differences between an agreement by a wife for support and such an agreement as to a child. The wife is *sui juris* and can make an agreement which, if otherwise valid, waives or concedes rights to whatever extent she desires. On the other hand, by such an agreement, she can exact from the husband concessions far beyond those which alimony would give her. Easy to foresee is a broken marriage where a grasping wife secures an agreement for the payment of exorbitant separate maintenance. The agreement might well be

valid and so, enforceable, at the suit of the wife; yet, if its satisfaction were permitted from a spendthrift trust, not only would the will of the creator be frustrated, but the requirements of public policy be far exceeded because of the unreasonableness of the allowance. In the case of a child, the obligation of the father to support, imposed by law, cannot be bargained away or waived. Any provision of an agreement for the child may be disregarded by a court, which can increase or decrease an allowance for support. Article 16, Section 37 of the Code (1951); *Boggs v. Boggs*, 138 Md. 422; and *Melson v. Melson*, 151 Md. 196. We find then that the agreement by a parent to support a child, declared to be reasonable and proper, and so, enforceable by a court, constitutes an obligation which justifies the invasion of a spendthrift trust for its fulfillment. The public policy which underlies this holding certainly does not run counter to the recent trend of public policy in related matters. In 1950—after the decisions in the *Bauernschmidt, Robertson,* and *Hitchens* cases—the people amended Article III, Section 38, of the Constitution of Maryland, so that it reads: "No person shall be imprisoned for debt, *but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for alimony, shall not constitute a debt within the meaning of this section.*" (Italicized portion added by amendment). Two things are significant: first, an agreement for support or alimony, approved by a court of competent jurisdiction, is equated to a decree of such court for support or alimony, neither being a debt; second, the agreement in the case before us was approved by a court of competent jurisdiction. A second evidence of the trend of public policy—and this would seem to answer the argument of the trustee that a non-resident wife is not to be favored as against a domestic spendthrift trust—is found in the Uniform Reciprocal Enforcement of Support Act, codified as Article 89C of the Code (1951). By the enactment of that law, the Legislature showed a

policy of liberality towards the enforcement in Maryland of the claims of non-resident wives and children entitled to support. See also *State v. James,* 203 Md. 113, 100 A. 2d 12. Indeed, the common law rule has been said to be that a wife could reach for support property of a husband in a state in which neither she nor he resided. *George v. George,* (N. J.) 23 A. 2d 599. The chancellor was justified, therefore, in passing the decree as to payments of income and principal to make up the arrearages and for the deposit of the balance of Zouck's share of the trust estate in the registry of the court, subject to its further order. Article 16, Section 222 of the Code (1951) *Oles Envelope Corp. v. Oles,* 193 Md. 79, 94; *Johnson v. Johnson,* 202 Md. 547, 97 A. 2d 330; and *Ricketts v. Ricketts,* 4 Gill 105. Of course, future orders of the court in respect to the impounding of the funds, should not require the holding of more than enough to meet the weekly payments until the child passes her minority.

The appellants do not seriously question the right of the court to order the assignment of the insurance policies and the execution of the will.

One final consideration remains. The court awarded custody of the child to the wife. As a practical matter, it makes little difference whether this was or was not done, since the daughter has lived with the mother since the execution of the agreement and the appellant wishes her to remain. Nevertheless, we think the court was without jurisdiction in the matter of custody. The child was neither domiciled in Maryland nor here present. It is established that if there has been no fixing of custody by a court, the domicile of the child is that of the parent with whom it lives. *Restatement, Conflict of Laws,* Section 32. It is later stated in the same volume, in Section 117: "A state can exercise through its courts jurisdiction to determine the custody of children or to create the status of guardian of the person only if the domicil of the person placed under custody or guardianship is within the state." See also Section 146; and

*Beale, Conflict of Laws,* Vol. Two, Section 144.3, p. 717, et seq. It is urged by the appellees that equity, having taken jurisdiction of the case to require specific performance, can adjudicate all matters in dispute, or, in other words, retain jurisdiction for all purposes. The term jurisdiction imports not only power over the parties to the action but the right to adjudicate as to the subject matter in a given case. In matters of custody, jurisdiction of the person who seeks custody is not enough. There must be jurisdiction over the one of whom custody is sought for the court to have jurisdiction of the subject matter. Here there was not.

Our conclusion is that the decree appealed from should be affirmed, with the exception of so much of it as awards custody to the mother. That part is reversed.

> *Case remanded for passage of a decree in*
> *conformity with this opinion. Costs*
> *to be paid by the appellants.*

HENDERSON, J., dissenting in part:

On the point of venue, I agree that a suit for specific performance of a contract is a transitory action that will lie wherever the defendant can be reached with process, and that no valid objection to a decree for specific performance can be raised on the ground that the contract is one for support. I also agree that the decree cannot properly include an award of custody of a non-resident child having the domicile of its non-resident mother and not present in the State, the father being also a non-resident. Whether the decree could properly require the execution of a will, in its nature ambulatory, is open to doubt. See *Pomeroy, Specific Performance* (3d ed.), p. 492; 5 *Williston, Contracts* (Rev. ed.) § 1421; *Lorenzo v. Ottaviano,* 167 Md. 138. A required change in the beneficiary of a life insurance policy, where the policy permits a subsequent change at the option of the insured, would seem to be open to the same objection. The opinion treats both these questions as not seriously

pressed. My main point of disagreement is with that part of the decision which holds that funds in a spendthrift trust can be reached to satisfy the obligations, past and future, arising out of a contract for payments in lieu of support.

The bill of complaint relies solely on the contract, and seeks to fasten a lien upon the trust estate, of which the defendant is a beneficiary, to satisfy his contractual obligation. There is no claim for support as such under the pleadings. In the absence of contract, it may be doubted whether a suit in equity for support, unconnected with divorce or custody, would lie even against a resident defendant. Apparently no such redress was available at common law, although at least a moral duty was recognized. *Borchert v. Borchert,* 185 Md. 586, 590; *Burns v. Bines,* 189 Md. 157, 162; *Rawlings v. Rawlings,* 83 So. 146 (Miss.) ; *note* 33 Harv. L. R. 729. The matter has been dealt with by statute both in England and the United States. 2 *Bishop, Marriage, Divorce and Separation,* § 1155. None of the Maryland statutes touch the instant case. See Code (1951), Art. 16, secs. 34 and 75. See also Code (1951), Art. 89C, Art. 27, sec. 96, and Art. 12, secs. 8, 9, 12. Art. 72A, sec. 1, declares that a father and mother are jointly and severally charged with support, but does not implement the duty. Nor do any of these statutes indicate a policy of enforcing a duty of support when all of the parties are non-residents. Cf. *Restatement, Conflict of Laws,* secs. 457 and 458, comment (a) ; *Melvin v. Melvin,* 129 F. 2d 39, (C.A. D.C.) ; *Kiplinger v. Kiplinger,* 2 So. 2d 870.

In *State v. James,* 203 Md. 113, 121, it was held that a resident defendant was properly charged in Maryland with the crime of non-support, although the child was in another State, but it was stated that jurisdiction under Code (1951), Art. 27, sec. 96(b), was predicated upon the fact that the father was domiciled in Maryland. The *Restatement, Conflict of Laws,* § 457, was cited to indicate that a State has legislative jurisdiction to impose a penalty on that basis. The opinion in the instant case

relies upon the Uniform Support of Dependents Act, Code (1951), Art. 89C. (Acts of 1951, Ch. 301). But that Act also seems to be predicated upon the Maryland residence of the obligor, where the obligee is not a resident of or present in the State, for it declares (sec. 7) that the "Duties of support enforceable under this Article are those *imposed or imposable under the laws of Maryland* upon the alleged obligor *during the period for which support is sought."* (Italics supplied.) It may also be observed that the present proceeding is not within the terms of the Statute, for there is no petition from an initiating State, as the Act requires. The opinion also relies upon *George v. George,* 23 A. 2d 599 (N. J.). That case was based on a New Jersey statute, and dealt with separate maintenance of a wife. It was held that although both parties were non-residents, property of the husband in the State could be reached. Other courts have held to the contrary. See note 74 A. L. R. 1242. So have we. *Keerl v. Keerl,* 34 Md. 21. There is no comparable statute in Maryland.

I find nothing in Article III, sec. 38, of the Maryland Constitution to enlarge the court's jurisdiction to award support against a non-resident. That amendment was adopted to confer on a court of competent jurisdiction the same power to punish for contempt for failure to support, as traditionally exercised for failure to pay alimony. Cf. *Knabe v. Knabe,* 176 Md. 606. It did so by declaring that a decree for support, or approving an agreement for support, should not constitute a debt within the prohibition against imprisonment for debt. The additional remedy for disobedience of the order has no bearing whatever upon jurisdiction to pass the order in the first instance. It is said that a decree approving an agreement for support is equated to a decree for support in the absence of agreement, and that the agreement in the instant case has now been approved by a court. But the amendment seems to contemplate either a decree that presently and prospectively fixes an amount found necessary for support, or one that

adopts an amount presently agreed to by the parties, although the court is not bound by such an agreement. Here, there was no finding as to the present needs of the child or the relative resources of the parties, nor could the court find that the parties were in agreement. The decree was simply for specific performance of an agreement made years ago and immediately repudiated, and the award was by way of damages for past breaches and sequestration to insure future performance. There was no claim for reimbursement of expenditures for necessaries by one who had a joint duty to support, nor would such a claim be maintainable in equity. *Hull v. Hull,* 201 Md. 225, 233.

If any implication is to be drawn from the amendment, beyond its enlargement of the remedy by contempt, it would seem to be that suits for alimony and support should be handled by the same court in the same way. Yet the decision in the instant case sets up a new distinction, based largely upon the argument that an agreement in lieu of alimony is between parties *sui juris,* while an agreement in lieu of support of a child is not. But, obviously, the agreement in the latter case is between parties who are *sui juris,* and merely undertakes to fix the liability for support as between persons who are jointly liable. Such an agreement could never be binding upon the Court in passing an award.

Our recent decisions clearly mark the line of distinction between a general moral or legal duty to support a wife or child which may in a proper case be enforced in equity, and a contractual one voluntarily assumed. In *Safe Deposit & Trust Co. v. Robertson,* 192 Md. 653, we adopted the view of the *Restatement, Trusts,* § 157, that there is an exception to the well-established rule recognizing the validity of spendthrift trusts, in the case of claims against the beneficiary by his wife or child for support or by the wife for alimony. We rested the exception on grounds of public policy, rather than upon interpretation of the instrument creating the trust, to indicate our disapproval of the cases cited in *Scott,*

*Trusts,* § 157.1, which base the exception on a presumed intention of the donor. The better view, and the one relied on in most of the cases, is that the public policy, which frustrates the obvious desire of the donor to protect the beneficiary from the consequences of improvident undertakings and liabilities rashly incurred, comes into play only as against obligations imposed by law upon persons occupying the status of husband, parent or citizen and arising out of that status. 6 *American Law of Property* (1952), § 26.130, p. 585. We pointed out that since an alimony decree is always open to revision, and takes into account the current resources of the parties, there was only a remote danger that the beneficiary might be left destitute. In *Hitchens v. Safe Deposit & Trust Co.*, 193 Md. 62, following *Bauernschmidt v. Safe Deposit & Trust Co.*, 176 Md. 351, we held squarely that the exception did not extend to an obligation to pay permanent alimony based on a contractual undertaking. I think that case is controlling.

The opinion stresses the reasonableness of the contract, in that the weekly payments do not appear to be above what a court, having jurisdiction to award support, might allow. But this is an extraneous circumstance that should not affect the result. Actually, these payments were fixed as a result of a bargain, in which the contemplated property transfers on the one hand, and the waiver of alimony on the other, played a part. Thus, the figure arrived at in lieu of support for the child, may have been more or less than the court would determine or approve. The court could not decline to enforce the contract, based on an adequate consideration, even if it were grossly improvident and unreasonable. Cf. *Lawson v. Mullinix*, 104 Md. 156, 168, and note 65 A. L. R. 7, 75.

If the rule now announced is that any contract, for payments in lieu of support for a child, is enforceable against a spendthrift trust, then the protection stressed in the *Robertson* case is removed. I do not see how the court could sever the contract or limit its applicability

as against the spendthrift trust to what it might deem a proper allowance without depleting the fund, particularly where there is no finding as to support and no jurisdiction to make one.  Obviously, the court could not make a new contract for the parties.  Quite apart from the rule of *stare decisis*, I think the *Hitchens* case was rightly decided, and the reasoning there applied to alimony applies to support as well.  I think that part of the decree that allows recovery against the fund, based solely on specific performance of the contract, should be reversed.