12 A.3d 179

DEPARTMENT OF HUMAN RESOURCES, Montgomery County Office of Child Support Enforcement, ex rel. Andrea Allison

v.

Keith Scott MITCHELL, Sr.

No. 11, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Jan. 27, 2011.

50

Bradley J. Neitzel, Asst. Atty. Gen. (Joseph Spillman, Douglas Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellant.

Sameer Sidh, Ellicott City, MD, for appellee.

Panel: *SALMON, MEREDITH, and WOODWARD, JJ.

WOODWARD, J.

Appellants, the Maryland Department of Human Resources and Montgomery County Office of Child Support Enforcement ("MCOCSE")[1], appeal from the decision of the Circuit Court for Montgomery County regarding child support due to Andrea Allison ("Andrea"), a resident of Alabama, for the care of her children, Diana Allison ("Diana")[2] and Keith Scott Mitchell, Jr. ("Keith Jr."). In January 2007, MCOCSE registered with the circuit court a 1992 New York divorce decree that ordered appellee, Keith Scott Mitchell, Sr. ("Keith Sr."), to pay child support for his children, Diana and Keith Jr. Keith Sr. at first contested registration of the order but then withdrew his challenge. Later, Keith Sr. and MCOCSE agreed to a Consent Modified Child Support Order. The consent order provided, *inter alia*, that Keith Sr. was no longer obligated to support Keith Jr. because Keith Jr. was emancipated and that Keith Sr.'s support obligation for Diana was increased.

At the time of the filing of the consent order, however, Keith Sr. filed a request to set aside the declaration of his paternity of Diana. After a DNA test was conducted, it was revealed that Keith Sr. was not Diana's biological father. Thereafter, over MCOCSE's opposition, the circuit court excluded Keith Sr. as the father of Diana, vacated the registration of the New York decree and the Maryland consent order, and nullified Keith Sr.'s child support arrears relating to Diana. This appeal followed.

---

* James P. Salmon, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a specially assigned member of this Court.

1. We will refer to appellants simply as "MCOCSE."

2. Throughout the pleadings and record this child is variably referred to as Deanna and Diana. Because we have been provided no explanation for this inconsistency, we have chosen to utilize the name recorded on the 1992 New York divorce decree, Diana.

MCOCSE presents one question for our review, which we have rephrased as two questions [3]:

I. Did the circuit court err in concluding that the parentage of Diana had not been determined previously by the State of New York?

II. Did the circuit court err in permitting Keith Sr. to utilize the defense of nonparentage in the proceeding to register and enforce the New York divorce decree?

Finding error, we reverse and remand for further proceedings.

## BACKGROUND

Keith Sr. and Andrea (then Andrea Mitchell) were granted a Divorce Judgment in New York, on March 18, 1992 (the "New York divorce decree" or the "New York support order"). The New York divorce decree noted that Andrea would have custody "of the child(ren) of the marriage, i.e." Keith Jr., born June 8, 1987, and Diana, born February 17, 1990. The decree further ordered Keith Sr. to pay child support to Andrea in the total amount of $62 per week "for all children."

On January 24, 2007, at the request of Alabama, MCOCSE filed the New York support order in the Circuit Court for Montgomery County, pursuant to the Uniform Interstate Family Support Act ("UIFSA"),[4] along with a request to file a foreign child support order. On February 15, 2007, Keith Sr., acting *pro se*, filed an answer to the request to file a foreign child support order in which he raised the defense that Keith Jr. was emancipated. In his answer, Keith Sr. made no mention of Diana or his parentage of her. On April 11, 2007, a hearing was held before a Special Master of the Circuit Court

---

3. MCOCSE's question is: "Did the circuit court err in excluding [Keith Sr.] as the father of his daughter, when it allowed nonparentage as a defense to enforcement of child support, despite a 1992 New York divorce judgment that found him to be the father?"

4. All references to UIFSA are to the Maryland Code (1984, 2006 Repl.Vol., 2010 Cum.Supp.), Family Law Article.

for Montgomery County on Keith Sr.'s opposition to MCOCSE's request to file a foreign child support order. At that hearing Keith Sr. withdrew his opposition to the registration of the foreign order. Keith Sr. also signed a Line, filed on April 19, 2007, stating that "[Keith Sr.] withdraws his petition/opposition to registration of the Foreign Support Order."

Meanwhile, on March 6, 2007, MCOCSE filed a Motion for Modification of the foreign support order in which MCOCSE claimed that the "incomes and expenses of the custodial and non-custodial parents have materially changed, warranting an increase/decrease in the amount of support." On April 11, 2007, Keith Sr. filed an answer to MCOCSE's motion for modification denying that there had been a material change in the parties' incomes and expenses warranting an increase in the amount of child support. That same day Keith Sr. also filed a Counter–Petition/Motion to Modify Child Support. In his counter-petition, Keith Sr. alleged that "our eldest child, Keith Jr. is emancipated by age and other factors." Again, Keith Sr. failed to mention Diana or his parentage of her. Indeed, in the request for relief in his counter-petition, Keith Sr. asked the circuit court, among other things, to "reduce the number of minor children from 2 to 1."

On June 21, 2007, a hearing was held on MCOCSE's motion for modification before a Special Master of the circuit court. At that hearing, a Consent Modified Child Support Order between Keith Sr. and MCOCSE was submitted to the court. The consent order increased Keith Sr.'s child support obligation from $62.00 per week for both children to $483.00 per month for Diana and eliminated any ongoing support obligation for Keith Jr. The consent order also set forth Keith Sr.'s total arrears for both children at $41,345.83 as of June 21, 2007.

On June 21, 2007, Keith Sr. also filed a Request to Set Aside Declaration of Paternity and Request for Modification of Child Support. In his request, Keith Sr. stated his belief that he was not Diana's father because, according to Keith Sr., Andrea

"admitted I am not the Father and I was in military [sic] when child was conceived." In the request, Keith Sr. asked the court to order the parties and Diana to undergo a DNA test to determine whether Keith Sr. could be excluded as Diana's father. MCOCSE filed no response to Keith Sr.'s request for genetic testing, and on July 12, 2007, the circuit court entered an order granting the requested test. On October 11, 2007, MCOCSE filed the results of a paternity test, which determined that Keith Sr. was not Diana's biological father.

On October 17, 2007, MCOCSE filed a response to Keith Sr.'s Request to Set Aside Declaration of Paternity and Request for Modification of Child Support. In its response, MCOCSE claimed that Keith Sr.'s paternity of Diana had been determined under the law of New York by virtue of the New York divorce decree and that under Maryland Code (1984, 2006 Repl.Vol.), § 10–327 of the Family Law Article ("F.L."), parentage of a child that has been previously determined by or pursuant to law cannot be raised as a defense under a UIFSA action. MCOCSE also asserted that Keith Sr. failed to file a timely challenge to the validity or enforcement of the New York support order, as is required by F.L. § 10–345, and even if he had, non-paternity was not a defense available to Keith Sr. in contesting the validity or enforcement of a registered order under F.L. § 10–346. MCOCSE concluded by asking the circuit court to deny Keith Sr.'s request to set aside the New York paternity determination and to deny Keith Sr.'s request to modify the Consent Modified Child Support Order dated June 21, 2007.

On January 18, 2008, the circuit court held a hearing at which it concluded that there had been no determination of paternity by New York, that the defense of nonparentage was available to Keith Sr. in the instant case, and that it was "kind of a logical absurdity to require him to continue paying and paying for past [sic] for a child that's not his." On February 1, 2008, the circuit court entered an order that, *inter alia,* excluded Keith Sr. as Diana's father, vacated both the registration of the New York support order and the Consent Modified Child Support Order, and nullified the arrears Keith

Sr. owed for Diana. On February 11, 2008, MCOCSE filed a motion for reconsideration, which was denied on February 29, 2008. Thereafter, MCOCSE filed a timely notice of appeal.

## DISCUSSION

MCOCSE argues that the circuit court erred when it allowed Keith Sr. to raise a defense of nonparentage of Diana. Specifically, MCOCSE contends that under UIFSA, this defense is barred when parentage has previously been determined. According to MCOCSE, Keith Sr.'s New York divorce decree that referred to Diana and Keith Jr. as "children of the marriage" and set a child support obligation was a determination of parentage.[5]

Keith Sr. responds that the New York divorce decree created only a presumption of parentage, and was not a determination of parentage.[6] According to Keith Sr., under Maryland law, a "properly ordered" paternity test, as here, rebuts the presumption of paternity based on Diana's conception during Keith Sr. and Andrea's marriage. Keith Sr. further contends that UIFSA allowed him to raise the defense of nonparentage as a "defense under the laws of this State."

---

**5.** MCOCSE also argues that the circuit court's judgment also violated the "Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, and the federal Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B." Specifically, MCOCSE contends that the New York divorce decree, which determined Keith Sr.'s parentage of Diana, was entitled to full faith and credit, and the circuit court did not accord the New York judgment's finding of paternity such full faith and credit. In light of our determination, discussed *infra*, that the trial court erred in its interpretation and application of the provisions of UIFSA, we need not address this argument.

**6.** As a preliminary argument, Keith Sr. asserts that "whether to grant [Keith Sr.'s] request for a paternity test has been waived by MCOCSE." This argument is inconsequential as MCOCSE appeals the circuit court's final order that excluded Keith Sr. as the father based on the results of the genetic testing and not on the court's decision granting an order to administer the genetic testing. The order granting the genetic testing does not automatically result in an order excluding Keith Sr. as father. Nor does the order granting the genetic testing, and MCOCSE's alleged acquiescence, prevent MCOCSE from setting forth arguments on the legality of the final order.

Finally, Keith Sr. argues that, when the circuit court modified the New York support order, it assumed "continuing and exclusive jurisdiction," and thus UIFSA ceased to apply.

## Standard of Review

The instant appeal concerns the proper interpretation of the UIFSA statute. Where "the issue is the circuit court's interpretation of [a] statute, and, thus, a question of law, our review of the circuit court's decision is *de novo.*" *Hernandez v. Hernandez,* 169 Md.App. 679, 688, 906 A.2d 429 (2006).

## I.

In rendering its decision, the circuit court below stated: "I don't think there was a determination [as to Keith Sr.'s paternity], as contemplated by the statute[,] in New York." As a result, in its final order, the circuit court directed "that pursuant to genetic testing ordered by this court . . . and the results thereof . . . [Keith Sr.] be and hereby is excluded as the father of the minor child [Diana], born February 17, 1990." MCOCSE contends that, under New York law, Keith Sr.'s paternity of Diana had been previously determined by the New York court. We agree.

## A Determination of Parentage by New York

In *Sandra I. v. Harold I.,* 54 A.D.2d 1040, 388 N.Y.S.2d 376 (N.Y.App.Div.1976), a husband and wife were divorced by a decree that "awarded petitioner, the mother, 'sole custody of the infant issue of the marriage of the parties hereto, *viz.,* Bradford * * * age 2 years', and also awarded her $60 weekly for the support and maintenance of herself and the child." *Id.* at 377. Later, the father sought to terminate the support order and deny his paternity. *Id.* The mother claimed the issue of paternity was barred by the doctrine of *res judicata. Id.* The Supreme Court of New York, Appellate Division, determined that *res judicata* did not apply, but concluded instead that "a question of collateral estoppel rather than *res judicata* [was] presented." *Id.* Under that doctrine,

however, the Court rejected the father's attempt to challenge paternity. The Court reasoned:

> **There can be no question that the issue of paternity was decided in the divorce action when the specific finding was made that Bradford "I" \* was the "infant issue of the marriage".** Such a finding was necessary and was required to be made on the issue of support which was before the Supreme Court for determination in the divorce action. **Before an order of support could be made in that action, the court necessarily made a determination of paternity, as only a "parent" may be ordered to support his or her child.**

*Id.* at 378 (emphasis added) (citation omitted).

The Supreme Court of New York, Appellate Division, came to the same conclusion in *Jeanne M. v. Richard G.*, 96 A.D.2d 549, 465 N.Y.S.2d 60 (N.Y.App.Div.1983), a case in which the mother challenged the Family Court's order for a blood test for paternity in the course of a child support modification proceeding. *Id.* at 61. The Supreme Court reversed the order granting the blood test. *Id.* The appellate court stated:

> There can be no question that the issue of paternity was decided in a prior divorce action and prior child support proceedings. Before an order of support could be made, **the court necessarily made a determination of paternity, as only a "parent" may be ordered to support his or her child.** We conclude, therefore, that respondent is collaterally estopped from now raising the issue of his paternity and that the Family Court erred in ordering the HLA blood test.

*Id.* at 61–62 (emphasis added) (citations omitted).

In the instant case, the New York divorce decree stated:

ORDERED AND ADJUDGED that:

1. [Keith Sr.] shall have judgment that the marriage of the parties is dissolved on the evidence found in the Findings of Fact and Conclusions of Law. . . .

2. Andrea ... shall have custody of **the child(ren) of the marriage, i.e.**

| NAME | DATE OF BIRTH |
|---|---|
| [Keith, Jr.] | 6/8/87 |
| Diana Sade Mitchell | 2/17/90 |

3. [Keith Sr.] shall have visitation rights with **the children of the marriage** to be arranged with [Andrea].

\* \* \*

5. **Ordered and Adjudged that [Keith Sr.[7]] shall pay to ... Andrea ... by check or money order drawn to that individual's order and forwarded on ... the first day of the month ... after the date of this judgment ... the sum of $62.00 ... for all children for the support of the children, making a total sum of $62.00 per week;**

...

(Emphasis added).

The decree clearly refers to Keith Jr. and Diana as "the children of the marriage." The decree also establishes a support obligation on Keith Sr., "for all children," which means that the court "necessarily made a determination of paternity, as only a 'parent' may be ordered to support his or her child." *Jeanne M.*, 465 N.Y.S.2d at 61. Consequently, Keith Sr. would be "collaterally estopped from now raising the issue of his paternity." *Id.* We therefore conclude that, under New York law, the New York divorce decree did not merely raise a presumption regarding the paternity of Keith Jr. and Diana, but instead, the New York divorce decree constituted a determination of Keith Sr.'s paternity of Keith Jr. and Diana. Accordingly, the circuit court erred by concluding that there was not a "determination, as contemplated by the statute[,] in New York."

## II.

The circuit court also ruled that F.L. § 10–346 of UIFSA "does provide an opportunity for [Keith Sr.] ... to challenge

---

7. The New York court here stated "Defendant," which according to the caption of the case would be Andrea; however, the context makes clear that the court was referring to Keith Sr.

[the New York support order], ... under the laws of this state ... based on the paternity test." MCOCSE argues that, under UIFSA, Keith Sr. was barred from raising the defense of nonparentage of Diana in the UIFSA proceeding below. We conclude that, not only was Keith Sr. barred from raising the defense of nonparentage, but, even if he had such right, he waived it.

## UIFSA

"UIFSA was originally drafted by the National Conference of Commissioners on Uniform State Laws...." *Holbrook v. Cummings,* 132 Md.App. 60, 64, 750 A.2d 724, *cert. granted,* 360 Md. 273, 757 A.2d 809 (2000). Since its revision in 1996, "[m]ost United States jurisdictions have ... enacted UIFSA as their local law." *Id.* at 65, 750 A.2d 724. "Maryland substantially adopted the major provisions of UIFSA effective January 1, 1997, as ... [F.L.] § 10–301 *et seq." Id.*

Under UIFSA, "[a] support order ... issued by a tribunal of another state may be registered in this State for enforcement." F.L. § 10–340. UIFSA provides a statutory scheme that, among other provisions, establishes jurisdiction in Maryland circuit courts, *see* F.L. §§ 10–302 and 10–304, and grants the circuit courts power to enforce and modify support orders, *see* F.L. §§ 10–309 and 10–350. F.L. § 10–341 sets forth the procedure for initiating registration of a foreign order. Under that section, a person or entity seeking registration of a foreign order must send to the appropriate circuit court a letter requesting registration, "two copies, including one certified copy, of the order to be registered," a sworn statement showing the amount of any arrearage, the name and certain information about the obligor, and "the name and address of the obligee and, if applicable, the person to whom support payments are to be remitted."

Upon filing, an order *is registered* and may be "enforce[d] in the same manner and is subject to the same procedures as an order issued by a tribunal of this State." F.L. § 10–342(b). The circuit court "shall recognize and enforce, but may not

modify, a registered order if the issuing tribunal had jurisdiction." [8] F.L. § 10–342(c). Subject to certain exceptions, "the law of the issuing state governs" the order. F.L. § 10–343(a). The circuit court, however, "shall apply the procedures and remedies of [Maryland] to enforce current support and collect arrears and interest due on a support order of another state registered in [Maryland]." F.L. § 10–343(c).

"When a support order ... issued in another state is registered, the registering [circuit court] shall notify the nonregistering party." F.L. § 10–344(a). The notice must include a copy of the order and certain information regarding the rights of the nonregistering party and the implications of registration of the order. F.L. § 10–344. In particular, the nonregistering party must be informed "that a hearing to contest the validity or enforcement of the registered order must be requested within 20 days after the date of mailing or personal service of the notice." F.L. § 10–344(b)(2). If the nonregistering party requests a hearing, then "[t]he nonregistering party may seek to vacate the registration, to assert any defense to an allegation of noncompliance with the registered order, or to contest the remedies being sought or the amount of any alleged arrearages pursuant to § 10–346 of this subtitle." F.L. § 10–345(a). *If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law.*" F.L. § 10–345(b) (emphasis added).

UIFSA allows "the party contesting enforcement of the registered order, to assert one or more of seven enumerated defenses." *Super. Ct. of Ca. v. Ricketts,* 153 Md.App. 281, 345, 836 A.2d 707 (2003). Those defenses are found in F.L. § 10–346, which provides:

(a) *Defenses.*—A party contesting the validity or enforcement of a registered order or seeking to vacate the registra-

---

8. The circuit court, however, may modify a registered order if the issuing tribunal loses jurisdiction. *See* F.L. § 10–350; *Super. Ct. of Ca. v. Ricketts,* 153 Md.App. 281, 319, 836 A.2d 707 (2003).

tion has the burden of proving one or more of the following defenses:

(1) the issuing tribunal lacked personal jurisdiction over the contesting party;

(2) the order was obtained by fraud;

(3) the order has been vacated, suspended, or modified by a later order;

(4) the issuing tribunal has stayed the order pending appeal;

(5) **there is a defense under the law of this State to the remedy sought;**

(6) full or partial payment has been made;

(7) the statute of limitation under § 10–343 of this subtitle precludes enforcement of some or all of the alleged arrearages; or

(8) the alleged controlling order is not the controlling order.

(b) *Remedies when defense established.*—If a party presents evidence establishing a full or partial defense under subsection (a) of this section, a tribunal may stay enforcement of the registered order, continue the proceeding to permit production of additional relevant evidence, and issue other appropriate orders. An uncontested portion of the registered order may be enforced by all remedies available under the law of this State.

(c) *Failure to establish defense.*—If the contesting party does not establish a defense under subsection (a) of this section to the validity or enforcement of the order, the registering tribunal shall issue an order confirming the order.

(Emphasis added).

■ In sum, "[a]fter a foreign judgment has been duly filed, the grounds for reopening or vacating it are limited to lack of personal or subject matter jurisdiction of the rendering court, fraud in procurement (extrinsic), satisfaction, lack of due process, or other grounds that make the judgment invalid or

unenforceable." *Ricketts,* 153 Md.App. at 345, 836 A.2d 707 (emphasis and quotations omitted).

■ In addition to the limitations on defenses enumerated in F.L. § 10-346, F.L. § 10-327 provides: "A party whose parentage of a child has been previously determined by or pursuant to law may not plead nonparentage as a defense to a proceeding under this subtitle." The Comment to this section in the Interstate Family Support Act (1996) states:

> Arguably this section does no more than restate the basic principle of res judicata. However, there is a great variety of state law regarding presumptions of parentage and available defenses after a prior determination of parentage. This section is intended neither to discourage nor encourage collateral attacks in situations in which the law of a foreign jurisdiction is at significant odds with local law. **If a collateral attack on a parentage decree is permissible under the law of the issuing jurisdiction, such an action must be pursued in that forum and not in a UIFSA proceeding.** In sum, this section mandates that **a parentage decree rendered by another tribunal is not subject to collateral attack in a UIFSA proceeding.** Of course, an attack on an alleged final order on a fundamental constitutional ground is permissible in the forum state, such as a denial of due process because of a failure of notice and opportunity to be heard or a lack of personal jurisdiction over a party who did not answer or appear.

(Emphasis added).

Keith Sr. contends that under F.L. § 10-346(a)(5), he can raise the defense of nonparentage of Diana, because it is a "defense under the laws of this State." Keith Sr. points to two Maryland statutes for the proposition that "if a child is either born or conceived during a marriage a presumption of parentage is created, not a declaration." According to Keith Sr., those statutes are Maryland Code (1974, 2001 Repl.Vol.), § 1-206 of the Estates & Trusts Article ("E.T."), which provides that "[a] child born or conceived during a marriage is presumed to be the legitimate child of both spouses," and F.L.

§ 5–1027(c), which provides that, when a child is born during a marriage, it creates a rebuttable presumption that the parties of the marriage are the parents of that child. Keith Sr. concludes that this presumption was "easily" rebutted by the genetic test results showing that he was not the father of Diana and thus is a defense under the laws of Maryland to the New York support order within the meaning of F.L. § 10–346(a)(5). The circuit court agreed with Keith Sr. We do not.

In our view, Keith Sr. overlooks F.L. § 10–327, which expressly prohibits nonparentage as a defense in a UIFSA proceeding. In other words, the Maryland legislature has declared, in no uncertain terms, that nonparentage is *not* "a defense under the laws of this State" to the validity or enforcement of a registered order under UIFSA. To hold otherwise would render F.L. § 10–327 nugatory and thus violate the tenet of statutory construction that "[a] statute must be read so that no word, clause, sentence, or phrase is rendered superfluous or nugatory." *Comptroller of the Treasury v. Sci. Applications Int'l Corp.*, 405 Md. 185, 198, 950 A.2d 766 (2008). We therefore conclude that the circuit court erred by holding that Keith Sr. could raise the defense of nonparentage under F.L. § 10–346(a)(5).

### Waiver

We also conclude that, even if Keith Sr. could have raised the defense of nonparentage under F.L. § 10–346(a)(5), he waived his right to do so under the facts of the instant case. We explain.

In the instant case, MCOCSE filed a Request to File Foreign Child Support Order with the circuit court on January 24, 2007. Included with the filing was a statement of the support amount, arrearages, information about the obligor, and information about the obligee. On January 26, 2007, the clerk of the court sent Keith Sr. a Notice of Filing of Foreign Child Support Order consistent with the provisions of F.L. § 10–344. On February 15, 2007, the twentieth day after notice was sent to Keith Sr., he filed an answer to the Request to File Foreign Child Support Order. In his answer, Keith

Sr., acting *pro se*, stated: "In my defense, I also want the [c]ourt to consider the following facts . . . 19 year old son not living with mother supporting himself. Request emancipation from child support payment." The answer did not raise the defense of nonparentage of Diana, nor did it even mention Diana. Shortly thereafter, the clerk set the matter in for a hearing on April 11, 2007.

■ As previously stated, at the hearing on April 11, 2007, Keith Sr. withdrew his opposition to the registration of the New York support order. Keith Sr. and MCOCSE also signed a Line, filed on April 19, 2007, stating that "[Keith Sr.] withdraws his petition/opposition to registration of the Foreign Support Order." The Line also asked the circuit court to remove the case from the April 11, 2007 hearing calendar. Because Keith Sr. withdrew his opposition to the registration of the New York support order and rescinded his request for a hearing under F.L. § 10–345, he was no longer a "party contesting the validity or enforcement of a registered order or seeking to vacate the registration" under F.L. § 10–346(a), and thus Keith Sr. was not entitled to raise any of the defenses set forth in that section.[9] Moreover, the aforementioned actions of Keith Sr. constituted a failure "to contest the validity or enforcement of the registered order." F.L. § 10–345(b). Consequently, F.L. § 10–345(b) directs that the New York support order be "confirmed by operation of law." Therefore, we hold that Keith Sr. waived his right to raise any defenses, including nonparentage of Diana, to the validity or enforcement of the New York support order under F.L. § 10–346(a).[10]

---

**9.** Neither could Keith Sr.'s June 21, 2007 Request to Set Aside Declaration of Paternity raise the defenses under F.L. § 10–346(a), because such request was filed 148 days after Keith Sr. was sent notice of the filing of the New York support order, well beyond the 20 day time limit imposed by F.L. § 10–345(a).

**10.** Even if Keith Sr. had not withdrawn his opposition to registration of the New York support order, we would conclude that, by not raising the defense of nonparentage in his February 15, 2007 answer to MCOCSE's

## Modification of a Support Order Under UIFSA

■ On June 21, 2007, Keith Sr. and MCOCSE signed a Consent Modified Child Support Order that set Keith Sr.'s monthly child support payment for Diana at $483 per month, established his arrearages at $41,345.83, and removed Keith Jr. from further support. The Consent Modified Child Support Order was approved by the circuit court and entered on June 22, 2007. The modification was carried out pursuant to F.L. §§ 10–349 and 10–350, which establish the procedures for modification of a registered foreign support order and the consequences of such modification.

F.L. § 10–349 states that a registered child support order of another state may be modified only if the requirements of F.L. § 10–350 have been met.[11] F.L. § 10–350(a) provides:

(a) *When permitted.*—If § 10–352 of this subtitle does not apply, except as otherwise provided in § 10–353.1 of this subtitle, on the filing of a complaint, **a tribunal of this State may modify a child support order issued in another state that is registered in this State** if, after notice and hearing, the tribunal finds that:

(1) the following requirements are met:

(i) neither the child, nor the obligee who is an individual, nor the obligor resides in the issuing state;

(ii) a plaintiff who is a nonresident of this State seeks modification; and

(iii) the defendant is subject to the personal jurisdiction of the tribunal of this State; or

(2) this State is the state of residence of the child or a party who is an individual is subject to the personal jurisdiction of the tribunal of this State and all of the parties who are individuals have filed consents in a record in the issuing

---

request to file a foreign child support order, he waived all defenses other than the emancipation of Keith Jr.

11. F.L. § 10–349 also provides that a registered order may be modified if the requirements of F.L. § 10–352 or 10–353.1 are met. Those sections do not apply to the facts of the case *sub judice.*

tribunal for a tribunal of this State to modify the support order and assume continuing, exclusive jurisdiction.

(Emphasis added). The result of modification is that, "[o]n issuance of an order by a tribunal of this State modifying a child support order issued in another state, *the tribunal of this State becomes the tribunal of continuing, exclusive jurisdiction.*" F.L. § 10–350(e) (emphasis added).

Keith Sr. argues that, when the Consent Modified Child Support Order was approved by the circuit court, the circuit court became the tribunal of "continuing and exclusive jurisdiction," and as a result, "the order essentially became a Maryland order, and therefore outside the scope of UIFSA." Because, according to Keith Sr., UIFSA did not apply to the instant case "once the child support order was modified, nonparentage ceased to be barred as a defense by UIFSA under [F.L.] § 10–327." Keith Sr. contends that he was then able to challenge the New York paternity determination by the Maryland presumption of paternity under E.T. § 1–206 and F.L. § 5–1027(c), along with the genetic test results excluding him as the father of Diana. We disagree and explain.

 "Jurisdiction is defined as power over the subject matter and parties to suit, from which power the court derives authority to hear the case on the merits." *Stewart v. State,* 21 Md.App. 346, 348, 319 A.2d 621 (1974), *aff'd,* 275 Md. 258, 340 A.2d 290 (1975). "The term . . . imports not only power over the parties to the action but the right to adjudicate as to the subject matter in a given case." *Zouck v. Zouck,* 204 Md. 285, 302, 104 A.2d 573 (1954). In the context of UIFSA, granting "continuing, exclusive jurisdiction" is an essential part of effectuating orderly enforcement and modification of child support orders between states. Speaking for this Court in *Ricketts,* Judge Ellen Hollander elaborated:

UIFSA provides procedural and jurisdictional rules for interstate child support proceedings, including the enforcement of foreign child support orders. Among other things, UIFSA implements the one-order system. This means that

only one state's order governs, at any given time. [ ] This necessarily requires all other states to recognize that order and to refrain from modifying it unless the first state has lost jurisdiction. Under this proposition, only one state controls the support obligation, and once that state obtains jurisdiction, it then has continuing exclusive jurisdiction over the parties.

153 Md.App. at 319, 836 A.2d 707 (citations and quotations omitted).

Keith Sr. does not cite, and we have not found, any support for the proposition that, once a circuit court modifies a registered foreign child support order under UIFSA and thereby obtains continuing, exclusive jurisdiction, UIFSA no longer applies. The statutory provisions granting the circuit court the authority to modify a registered order, as well as continuing, exclusive jurisdiction, are part of the UIFSA statute itself. There is simply no language in UIFSA that provides, expressly or impliedly, that UIFSA does not apply upon the entry of an order modifying a registered order. Moreover, Keith Sr.'s interpretation of "continuing, exclusive jurisdiction" under UIFSA would allow the avoidance of an express provision of UIFSA, namely, F.L. § 10–327. To allow Keith Sr. to utilize nonparentage as a defense because the support order was registered and modified in Maryland would not only render F.L. § 10–327 nugatory, but it would frustrate the purpose of UIFSA and the system of interstate cooperation and respect that the uniform law represents by disregarding New York's parentage determination.

We agree with appellee that UIFSA empowered the circuit court to *modify* the New York support order. The circuit court, however, was not empowered under the facts of the instant case to *vacate* the New York support order or its registration in Maryland or render a determination of paternity. Nor was the circuit court entitled to vacate the modified order based on the impermissible defense of nonparentage. *See* F.L. § 10–327. Therefore, we conclude that the circuit court erred by vacating the Notice of Filing of Foreign Support Order and the Consent Modified Child Support Or-

der, determining that Keith Sr. was not the father of Diana, and otherwise modifying Keith Sr.'s support obligation and arrearages regarding Diana.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.**